## ELIZABETH E. BAKER *vs.* CHARLES E. HILL ET AL., RECEIVERS.

*When Mortgagee Entitled to Rents of Mortgaged Property in the Hands of Receivers.*

When receivers take possession of mortgaged property and collect rents therefrom after the mortgage is overdue, and the mortgagee has obtained leave of the Court to enforce his rights, then if the proceeds of the foreclosure sale are insufficient to pay the mortgage debt, the mortgagee is entitled to demand from the receivers the rents so collected.

Appeal from the Circuit Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Joseph C. France* and *Harry M. Benzinger* (with whom was *James S. Calwell* on the brief), for the appellant.

I. Applying the principles stated in *Barron* v. *Whiteside*, 89 Md. 456, to the facts presented here, we submit that the appellant would be entitled to receive the rents in reduction of

the morgage deficit, irrespective of the fact that such deficit was caused in part by the taxes she was required to pay. And this on two grounds :

*First.* Inasmuch as the receivers were merely the hand of the Court, no demand or notice prior to the collection of the rents, was necessary ; and in this respect the case differs from *Barron* v. *Whiteside* where the rents were collected by a conventional trustee under the deed which made him the attorney in fact of the mortgagor. (1) The Land Company's rights ceased, at the latest, on the thirteenth of October, 1902 ; and after that date it clearly could no longer claim the rents as mortgagor in and entitled to possession. (2) The receivers did not become mortgagors in possession ; for even if the appointment vested in them the title and estate of the Land Company, this was a title *sub modo;* their holding was for the benefit of the persons ultimately entitled; and did not alter or displace existing rights. (3) Nor can the receivers claim the rent as a debt due the Land Company. The latter after default was merely a tenant at the will of the appellant; its right to collect the rent would have been defeated by any manifestation, however slight, of the appellant's intention; and before the rent was collected, and before all of it was even due, the receivers were appointed and the rights of the Land Company ceased. Upon what principle, then, should the appellant be prejudiced by the subsequent act of the receivers who collected the rent as the agents, not of the Land Company but of the Court? Why should she be denied on her petition of February 2nd, 1903, the relief which would have been granted if it had been asked for prior to the time the receivers collected the rents? Why should she be prejudiced because she waited to ascertain whether there would in fact be a deficit? We submit that the contrary view ignores this principle: that because the Court will not permit interference with its receiver therefore neither his appointment nor his possession is allowed to change existing rights. And it follows from this principle that the right of the appellant to demand the rent so long as it continued in the hands of the tenant, was not terminated

when and because the tenant paid the rent into the hands of
the Court.

· *Second*. But even if some demand or notice or some act
manifesting the appellant's intention to claim the rent prior to
the time of collecting, was necessary, we submit that such in-
tention appears. (1) The order of December 5th, 1902, was in
effect a direction to the receivers not to interfere. The appel-
lant was authorized to exercise her rights under the mortgage
as though "the decree in this cause had not been passed."
She knew that there was rent coming due from the tenant; she
knew that the Land Company could not collect it; and she
was entitled to assume that it was not necessary to watch the
Court. (2) Furthermore, by the arrangement, made just after
the tax sale and before the appointment of the receivers, be-
tween Livezy for the appellant and Nelson for the company,
the appellant had in effect manifested her intention with regard
to the rent. The mortgage was in default; although the Land
Company was not the original mortgagor, it was liable to the
appellant for the taxes, the non-payment of which had caused
the default (*Commercial Building Association* v. *Robinson*, 90
Md. 622); and the appellant refrained from foreclosing under
the promise of the company's secretary and agent to devote
the rent to the redemption of the land sold for taxes. Cer-
tainly this was a manifestation of the appellant's intention to
claim the rent to the extent at least, of three hundred and one
dollars and twenty-six cents, for the benefit of the mortgage.
And if "for this purpose slight acts will be deemed sufficient,"
89 Md. 462, there should be no doubt here.

II. But, independently of the appellant's right to the rents
as such, and irrespective of the question of demand and no-
tice upon which this may depend—she is entitled under the
first ruling in *Barron* v. *Whiteside*, to be reimbursed out of the
rents of the mortgaged property, the amount of taxes paid by
her.

When the receivers were appointed on the thirteenth day of
October, 1902, the taxes for 1901 had been collected by the
sale of five acres of the property, *to the tenant, who, at the time,
owed two hundred and fifty dollars rent :*

The receivers collected three hundred dollars on December
12th and two hundred dollars on December 22nd, 1902, in
all five hundred dollars, the rent of the entire farm. The
foreclosure sale did not take place until January 15th, 1903,
so that while the receivers were still in possession, the taxes
for 1902 came due. In view of these facts, there are several
sufficient grounds for the relief here sought.

(1) A Court of equity will not permit its receiver to indulge
in the operation vulgarly known as "skinning" the property
which comes into his possession. The maxims: "*Qui sentit
commodum sentire debet et onus ;*" and "*transit terra cum onere,*"
are applicable as well to receivers as to suitors. And this
Court says, concretely, in *Barron* v. *Whiteside :* "The mere
rent of land in the hands of the assignee solely the product of
land itself should be applied on those prior liens which would
be entitled to the proceeds of the land if sold." And again :
"If the tax collector and the owner of the ground rent had
filed petitions in the case asking that the trustee be required
to apply the rent in his hands to keep down the taxes and
ground-rent, we cannot doubt he should have been required
to do so." Moreover, since the tenant who owed the rent
was the same person who had bought in a part of the land at
the tax sale, the receivers should have allowed a set-off and
thereby restored the land sold to the security. .

(2) But it is entirely free from doubt that the appellant is
entitled to relief, by subrogation or substitution, to the rights
of the State : "Mrs. Barron having been forced to pay these
debts out of the proceeds of the sale by her, notwithstanding it
resulted in a large deficiency of her mortgages, she was enti-
tled to be subrogated to the rights of the State and city and
the owner of the ground-rent against the trustee." (89 Md.
459–60.) To the same effect are *Fulton* v. *Nicholson,* 7 Md.
107, and *Hebb* v. *Moore,* 66 Md. 167; and the principle is
strongly brought out by contrast in the case of *Parlett, Collec-
tor,* v. *Dugan,* 85 Md. 407. There the tax collector, who
was confessedly fighting in the interest of the ground-rent
owner, sought to recover taxes from the general assets held

by a trustee for the benefit of creditors. The attempt failed because the trustee had promptly declined to accept the property on which the taxes were overdue and he had received no rents nor income of any kind from it.

*Vernon Cook* (with whom were *Gans & Haman* on the brief ), for the appellees.

It is not disputed that there was a default in the mortgage owing to the non-payment of taxes, and that the mortgage was overdue, thus putting it in the power of the mortgagee to foreclose, to ask for the appointment of a receiver and to enter and take possession of the mortgaged property. While these are the rights of the mortgagee the general doctrine is well settled that, "so long as the mortgagor *is allowed* to remain in possession, he is entitled to receive and apply to his own use the income and profits of the mortgaged estate, and although the mortgagee may have the right to take possession upon condition broken, if he does not exercise that right he cannot claim the rent. If he wishes to receive the rents, he must take the means to obtain the possession." *Teal* v. *Walker*, 111 U. S. 249; *Barron* v. *Whiteside*, 89 Md. 462; *Jones, Mtges.*, secs. 667 and 770; 4 *Kent Comm.*, 157.

In *Freedman Company* v. *Shepherd*, 127 U. S. 502, the rule was said to be that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession or until possession is taken in his behalf by a receiver, or until in proper form he demands and is refused possession.

Being forced to recognize this as the general doctrine the mortgagee seeks to avoid its effect by various contentions. She says in substance : 1. That an alleged agreement with Nelson gave her a lien on the rent. 2. That the mortgagee is entitled to the rent by subrogation to an alleged lien of the tax collector thereon; she having paid the taxes. 3. That the order passed on December 5th, 1902, gave her a right to the rent.

In the present case there was not even a promise to apply

the rents to the taxes, but a purpose expressed so to do, and expressed in language which itself is inconsistent with a surrender of dominion. *Dillon* v. *Barnard*, 21 Wall. 439; *Hoyt* v. *Story*, 3 Barb. 264–6.

It is claimed by the mortgagee that she is entitled by subrogation to a supposed lien on the rent in favor of the State, she having paid the State tax. This proposition might merit discussion if the fact were established that the State had a lien on the fund in question. The evidence shows, however, that the State was satisfied with the real property within its jurisdiction, and actually sold a portion of it and received its taxes for the year 1901 in full from the purchaser; that it has never in any way claimed a lien on the rent, and actually lost all right to do so by permitting it to be paid into the general assets of the receivership.

We know of no statute which creates a tax lien on rents and profits from real estate, nor has any been referred to by counsel. If a tax sale were threatened and the mortgagee in order to prevent its occurrence had paid the taxes she might have been entitled to a preference to that amount from the receivers just as the State would thus have been entitled to a preference had it chosen to pursue that method of collection. When however, the State sells a portion of the property, and the taxes are paid by the proceeds of sale, it has unquestionably waived any lien it might have asserted on the rents from the entire tract and they become a portion of the general assets. Before the rent was received the mortgagee, who must of course have had notice of the sale, could have come in and claimed a default and demanded that the rents be paid to her or to the State in order to redeem the property sold, but not having done so, she has also relinquished any rights she might have had against the funds except those of a general creditor. *Barron* v. *Whlteside*, 89 Md. 448, is decisive of this question.

Unless therefore the mortgagee made demand on the receivers for possession of the premises prior to December 12th when the rent was collected, she can claim no preference in this case. It is insisted in her behalf that the petition of

November 28th, and the order of December 5th constitute such demand.

The order passed by the Court may be taken to contain the full measure of relief desired, as it was passed without alteration and just as presented by the petitioner. Yet it does not grant any rights to the petitioner. It makes no reference to the possession of the premises. The relief it grants is the privilege to the petitioners to exercise any remedies which belonged to her by virtue of the mortgage. The demand for possession is in itself a remedy. So by its very terms the order referred to negatives the contention that the petition constitutes such demand. *Barron* v. *Whiteside*, 89 Md. 448, contains the fullest discussion of questions involved to be found in this State, and the doctrine of the United States cases is approved to the effect that the mortgagor is not bound to account the mortgagee for rents "while the property is in his possession until a demand made therefore, or for a surrender of possession under the mortgage" or "until he takes actual possession or until possession is taken in his behalf by a receiver or until in proper form he demands *and is refused possession.*

The institution of foreclosure proceedings does not vest in the mortgagee the right to the rents and profits. He must make the proper demand for the possession or notify the tenant to pay them to himself or enter upon the premises. *Jones Mortgagees*, sec. 771; *Wilder* v. *Houghton*, 1 Pick. 87; *Mead* v. *Omry*, 3 Atkyns, 234–244; *Trent* v. *Hunt*, 9 Exch. 14–21; *Teal* v. *Walker*, 111 U. S. 246; *Dow* v. *Memphis R. R. Co.*, 124 U. S. 652; *Freedmans Sav. Co.* v. *Shepherd*, 127 U. S. 494.

PAGE, J., delivered the opinion of the Court.

This is an appeal from an order of the lower Court, sustaining exceptions to an account of the auditor, distributing the estate of the Washington and Baltimore Building and Loan Association, and disallowing the claim of the appellant.

The facts are undisputed. In 1897 the Rapid Transit Con-

struction Company of Baltimore City borrowed from the appellant the sum of eleven thousand dollars, and secured the same by a mortgage upon certain real estate. The mortgage does not appear in the record, but it is conceded that it contains the usual covenants, among them that until default the mortgagor should remain in possession of the mortgaged premises. On the 9th of December, 1897, the Rapid Transit Company conveyed the said real estate, subject to the mortgage, to the Washington and Baltimore Loan Company. The taxes for the year 1901 being due and unpaid, the Tax Collector of Baltimore County sold five acres of the tract to John H. Stirn, who was the tenant, for the sum of $290.50. On the 13th day of October, 1902, the last-mentioned corporation was by an order of the Court placed in the hands of the appellees, as receivers, with power to take possession of its property, &c., until the further order of the Court. On the fifth day of December, 1902, the appellant filed her petition, and the Court ordered that she have leave to pursue and exercise all of the rights and remedies in her vested by the terms and provisions of the mortgage; whereupon she proceeded to foreclose, and on the fifteenth day of January, 1903, became the purchaser of the mortgaged premises for the sum of $10,200, an amount not sufficient to discharge the mortgage debt. Subsequently the appellant redeemed the land that had been sold for the taxes of 1901 by the payment to Stirn of the sum of $290.50, with interest thereon at the rate of ten per cent and the costs.

On the 12th December, 1902, the receivers collected from the tenant the sum of $300 on account of rent for the year 1902; and on the 22nd December, the balance of the said annual rent, the further sum of $200, amounting in all to the sum of $507.22.

The appellant prayed the Court to pay to her out of this sum the sum of $301.26 paid by her in the redemption of the property, as stated, and also the residue of the rent collected on account of the taxes for the year 1902.

The Court in sustaining the exceptions to the auditor's report, overruled and disallowed her claim, and from its order she has appealed.

From this statement of the facts of the case it is clear that the right of the mortgagor to collect the rents (those then accrued or thereafter to accrue, as long as the receivership continued), ceased on the appointment of the receivers; and by virtue of the authority and direction of the Court passed to them. But the latter did not by their appointment become the assignees of the property. They were only entrusted with the care of it; and it was then *in custodia legis* "to await the ultimate disposal thereof by the Court, according to the rights and priorities of the parties concerned." *Gaither* v. *Stockbridge*, 67 Md. 225.

Notice to the tenant, therefore, not to pay the rent to the mortgagor but only to the mortgagee would have been wholly unavailing by reason of the fact that the rents and profits, being within the order of Court, could only have been paid to the receivers. Such notice, therefore, under the circumstances could only be effectual as being one of those "slight acts" referred to in *Barron* v. *Whiteside*, 89 Md. 463, sufficient for the mortgagee to manifest his intention or his purpose to collect the rents himself. But that was not the only means by which that intention could be manifested; for that purpose only "slight acts" are necessary. The payment of the rent on the 5th and 22nd December to the receivers might therefore exonerate the tenant from further liability, but cannot be regarded as the equivalent to payment of the mortgagor. The receivers having no estate in the property cannot in any sense be regarded as standing in the place of the mortgagor. The mortgagee also was restricted by the appointment of the receivers. The rents and profits, being in the custody of the Court, she could not exercise any of her rights under the mortgage without the leave of the Court first obtained. In the case of *Gaither* y. *Stockbridge*, *supra*, where a *landlord* sought to exercise his right to distrain upon property in the possession of the Court, this Court said it was the settled practice to order the receiver to pay the arrears of rent out of the proceeds of the property, or "to permit the landlord to proceed with his distress notwithstanding." There is no hard and fast rule however that

required the landllord in that case, or requires the mortgagee in this, to be confined to a selection of some particular one of the various modes of relief he may have, under the penalty of losing his claim in case he does not secure adequate and full relief in the particular one he may have chosen.    On the fifth of December, the same day on which the receivers collected the first installment of rent, the appellant filed a petition, setting forth the default of the mortgagor in the payment of his debt and the interest thereon, as required by the provisions of the mortgage, and praying for leave to foreclose and "for other relief."    This petition was presented to the Court on the 28th November but was not then signed, "owing to the fact the receivers asked the Court to delay the signing" for four or five days.    It thus appears that eight days before any part of the rent had been collected, the receivers received notification that the appellant was about to ask leave to pursue her rights and remedies under the mortgage.    This order was passed on the day the payment of the first installment of rent was made.    It provided that the appellant be " authorized and directed to pursue and exercise *all* of her rights and remedies in her vested by the terms," &c., of the mortgage.    The rights she was thus authorized to exercise were those, viz.; to foreclose, ask for the appointment of a receiver and to re-enter.    But that the Court had already taken possession of the property by the appointment of the receiver she might have pursued them all at once.    *Barron* v. *Whiteside*, 89 Md. 460.

One of these she immediately proceeded to exercise; she foreclosed the mortgage, and on the 2nd day of February asked the Court, while the fund was yet intact, to award it to her in payment of the overdue obligations of the mortgagor. She was fully entitled to all the protection the Court could legally and equitably confer upon her.    The bill was filed for the dissolution of the corporation on behalf of all creditors who would join the proceedings and contribute to its expenses. The appellant as one of the creditors had appeared in the cause and placed her rights in the care and protection of the Court. It would seem to be clear therefore that the fund sought to be

affected is now in the hands of the receivers, liable to be pursued by the mortgagee to the same extent as if it still remained in the hands of the tenant.    This case may therefore be assimilated to one where the mortgaged premises, being an insufficient security for the debt, a Court of equity may appoint receivers to take charge of them and the rents and profits; and in such case the mortgagee will be given ample protection.    *Kountze* v. *Hotel Co.*, 107 U. S. 395.

So, in *Barron* v. *Whiteside*, *supra*, this Court said, "In order to put an end to the authority of a mortgagor to collect the rents, it is only necessary for the mortgagee to manifest his intention to do so.    For this purpose slight acts will be deemed sufficient, and in *Boyce* v. *Boyce*, 6 Rich. 302, where, as here, the mortgaged property was in Court a claim for the rents made to the Court by a party to the suit in the progress of the cause was all that was required."

It follows from what we have said that, there being an insufficiency in the proceeds of the sale of the property on foreclosure, the appellant is entitled to have the rents collected by the receivers after the 28th November, 1902, applied to make good the deficiency.    The auditor's report should therefore have been confirmed.

> *Order, in so for as it sustains the exceptions to the account reversed, and the said report of the auditor is hereby finally ratified and confirmed, the costs to be paid by the receivers out of the funds still in their hands.*

(Decided December 1st, 1904.)