In re BRYN ATHYN INVESTORS, LTD., a Texas Limited Partnership, Debtor.

BRYN ATHYN INVESTORS, LTD., a Texas Limited Partnership, Plaintiff,

v.

HUTTON/CONAM REALTY PENSION INVESTORS, Defendant.

Bankruptcy No. 86–02268–SO5.
Adv. No. 86–0226–AP.

United States Bankruptcy Court, E.D. North Carolina.

Jan. 22, 1987.

John H. Small, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, N.C., Mark S. Kaufman, Troutman, Sanders, Lockerman & Ashemore, Atlanta, Ga., for plaintiff.

Joseph B.C. Kluttz, Kennedy Covington Lobdell & Hickman, Charlotte, N.C., for defendant.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the motion for summary judgment filed by the defendant, Hutton/Conam Realty Pension Investors ("R.P.I."), in response to a complaint filed by the plaintiff-debtor, Bryn Athyn

Investors, Ltd. ("Bryn Athyn"). The complaint seeks, among other things, turnover of an apartment complex, possession of which had been awarded to R.P.I. pursuant to a preliminary injunction entered in North Carolina Superior Court on September 22, 1986. A hearing before this court was held in Raleigh, North Carolina, on December 18 and 19, 1986.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (E), which this court may hear and determine.

## FACTS

Bryn Athyn is a limited partnership which on November 20, 1985, obtained a loan for $5.9 million from another limited partnership, R.P.I., in order to enable Bryn Athyn to purchase an apartment complex presently known as Bryn Athyn Apartments located in Raleigh, North Carolina. The apartment complex is Bryn Athyn's principal asset.

Bryn Athyn's indebtedness on the loan from R.P.I. is evidenced by a promissory note dated November 20, 1985. The note states that it is secured by a "Deed of Trust, Assignment of Rents and Security Agreement" ("Deed of Trust") and an "Assignment of Leases and Rents" ("Assignment"), both of which were executed "concurrently" with the promissory note on November 20, 1985. (Promissory Note, p. 4). In the Deed of Trust, Bryn Athyn conveyed title to the apartment complex to a trustee, to be held for the benefit of R.P.I. (Deed of Trust, p. 1). It is further provided that the mortgaged property shall be reconveyed to Bryn Athyn upon payment of all the sums due on the note. (Deed of Trust, p. 26.)

In the Deed of Trust, Bryn Athyn also conveyed to R.P.I. the right to possess the mortgaged property and the right to receive all rents currently due or which become due in the future. (Deed of Trust, p. 4). In the same document, R.P.I. granted Bryn Athyn a license to possess the mortgaged property and to receive rents subject to R.P.I.'s right to immediately revoke the license should Bryn Athyn default on the promissory note. (Deed of Trust, p. 8).

The Deed of Trust refers to itself as the "Mortgage," to Bryn Athyn as the "Mortgagor," and to R.P.I. as the "Mortgagee." (Deed of Trust, p. 1). It states that "[t]his Mortgage is intended to be a Security Agreement within the meaning of the Uniform Commercial Code of the State where the Mortgaged Property and/or Furniture is situated." (Deed of Trust, p. 24).

The Assignment is a separate document which states that it is made as "additional security" for the payment of the promissory note. (Assignment, p. 1). Like the Deed of Trust, it provides for the assignment to R.P.I. of the rights to possess the mortgaged property and to collect rents and it then grants to Bryn Athyn a conditional license to exercise those same rights. (Assignment, p. 1). The Assignment also contains the following language at page 3:

> The full performance of the Mortgage and the duly recorded release or satisfaction thereof shall render this Assignment void.

> The net proceeds collected by Assignee under the terms of this instrument shall be applied in reduction of the entire indebtedness from time to time outstanding and secured by the Mortgage.

Bryn Athyn failed to make payments on the promissory note due on August 1 and September 1, 1986. On September 10, 1986, R.P.I. obtained in the Superior Court for Wake County, North Carolina, a temporary restraining order permitting it to take possession of the apartment complex. The same court thereafter granted R.P.I.'s motion for a preliminary injunction permitting it to remain in possession of the property. On October 7, 1986, the day before a foreclosure hearing was scheduled to be

held in state court, Bryn Athyn filed a petition for relief under chapter 11 of the Bankruptcy Code.

On October 27, 1986, Bryn Athyn instituted an adversary proceeding in this court against R.P.I. seeking turnover of the apartment complex, an accounting by R.P.I. of expenses and income for the time R.P.I. was in possession of the complex, and damages for the "wrongful taking" of the property. On October 28, 1986, this court issued a preliminary injunction allowing Bryn Athyn to regain possession of the apartment complex. The order specified that it was interlocutory and not a final adjudication of the rights of the parties. On December 4, 1986, R.P.I. filed its motion seeking summary judgment on the complaint filed against it by Bryn Athyn.

## DISCUSSION AND CONCLUSIONS

■ In a memorandum filed in support of its summary judgment motion, R.P.I. advances three grounds why Bryn Athyn should not be entitled to possession of the apartment complex: (1) Bryn Athyn's bankruptcy petition was not filed in good faith; (2) Bryn Athyn will be unable to go forward with an effective reorganization; and (3) Bryn Athyn is not entitled to turnover pursuant to 11 U.S.C. § 542 because it had no ownership interest in the apartment complex when it filed its bankruptcy petition.

■ The first two of these grounds are inappropriate for granting summary judgment because both require a factual finding that the debtor has no hope of rehabilitation, a determination that cannot generally be made without an evidentiary hearing. In support of its argument that the debtor's case should be dismissed because it was not filed in good faith, R.P.I. cites *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986), which held that dismissal for lack of good faith is

appropriate when there is no going concern to preserve, no employees to protect, *and* no hope of rehabilitation other than the debtor's "terminal euphoria." The *Little Creek* Court went on to state, however, that a debtor should ordinarily be given the opportunity to respond to a claim that a bankruptcy petition was not filed in good faith. *Id.* at 1074. In deciding the good faith issue, a court must evaluate local financial realities and the debtor's motives and financial condition. *Id.* at 1072. It is often difficult to say that a debtor has no prospect for rehabilitation at an early stage of the case, *see, e.g., In re C.F. Simonin's Son's, Inc.*, 28 B.R. 707, 711 (Bankr.E.D.N.C.1983), and it is generally virtually impossible to do so before the debtor has the opportunity to present any evidence. Bryn Athyn takes the position that it will be able to effectively reorganize and the court cannot conclude, based on the pleadings, that there is no basis for this assertion. Therefore, summary judgment will not be granted on these first two grounds. *See Ross v. Communication Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

A question of law, rather than of fact, is presented by R.P.I.'s third argument in support of its summary judgment motion because there is no factual dispute concerning the terms of the loan agreement between R.P.I. and Bryn Athyn. R.P.I. contends that Bryn Athyn has no right to turnover of the apartment complex pursuant to 11 U.S.C. § 542(a) because all of its ownership rights in the complex had been extinguished prior to the filing of the bankruptcy petition.

In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court considered the scope of 11 U.S.C. § 542(a).[1] That section requires an entity in possession of property that the trustee may use, sell, or lease

1. Section 542(a) provides in relevant part:
   [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the

debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

under § 363 [2] to turn that property over to the bankruptcy trustee. Section 363 generally authorizes the trustee to use, sell, or lease "property of the estate" [3] if the court determines that secured creditors' interests in the property are adequately protected. In *Whiting Pools*, the IRS had lawfully seized property of the debtor pursuant to a tax lien prior to the debtor's filing of a chapter 11 bankruptcy petition. The Court held that, even though the debtor did not hold a possessory interest in the seized property at the time the bankruptcy petition was filed, it was still entitled to turnover of the property because it retained an interest in the property when the property had not yet been sold by the IRS. The Court noted that, had the debtor been divested of all interest in the property prior to the filing of its bankruptcy petition, § 542(a) "may not apply." 462 U.S. at 209. The Court in essence held that so long as the debtor retained some legal or equitable interest in property, its right to turnover under § 542 extended to all interests in that property:

> In proceedings under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future. Until the business can be reorganized pursuant to a plan under 11 U.S.C. §§ 1121–1129 (1976 ed., Supp. V), the trustee or debtor-in-possession is authorized to manage the property of the estate and to continue the operation of the business. See § 1108. By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. H.R. Rep. No. 95–595, p. 220 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." *Ibid.* The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate. Thus, to facilitate the rehabilitation of the debtor's business all the debtor's property must be included in the reorganization estate.

This authorization extends even to property of the estate in which a creditor has a secured interest. § 363(b) and (c); see H.R.Rep. No. 95–595, p. 182 (1977). Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured

---

2. 11 U.S.C. § 363, in pertinent part, provides:

(b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

. . . .

(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

. . . .

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

3. "Property of the estate" is defined in 11 U.S.C. § 541. That definition includes the following:

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.

. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests. § 363(e). At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession.

. . . .

As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens. In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.

462 U.S. at 203–04, 206–07, 103 S.Ct. at 2312, 2314 (case, treatise, and periodical citations omitted).

*Whiting Pools* has been interpreted as standing for the proposition that "[b]ankruptcy courts may order the turnover of property in which the debtor holds only a contingent possessory right, such as a right of redemption or the right to cure a default, as long as adequate protection can be afforded to the secured party." *In re Barton*, 58 B.R. 468 (Bankr.D.S.D.1986). Thus, consistent with *Whiting Pools*, courts have held that a debtor may obtain turnover of a vehicle lawfully repossessed before the debtor filed for bankruptcy where the debtor retained a right to redeem, *In re Riding*, 44 B.R. 846 (Bankr.D. Utah 1984), and of garnished funds when the debtor still had the right to petition the state court for the return of the funds, *In re Richardson*, 52 B.R. 237 (Bankr.M.D. Tenn.1985). *See also Matter of First Dade Corp.*, 17 B.R. 887 (Bankr.M.D.Fla.1982), in which the court implicitly held that a chapter 11 debtor was entitled to turnover of an apartment complex which had been sold at a prebankruptcy foreclosure sale when the debtor's right of redemption was still in force at the time the bankruptcy petition was filed.

Although R.P.I. concedes that Bryn Athyn retained an equity of redemption in the apartment complex under North Carolina law (Memorandum, p. 18), it claims that the present case can be distinguished from the above authorities by virtue of the assignment of rents and the right to possess made by Bryn Athyn to R.P.I. at the time the loan agreement was signed. According to R.P.I., this Assignment and the subsequent revocation of the conditional license granted Bryn Athyn completely extinguished Bryn Athyn's rights to collect rent and to possess the apartment complex so as to preclude turnover. The court does not find this argument to be persuasive.

■ The bankruptcy court must look to state law to determine the nature and extent of the property interests held by the debtor and creditors (unless some identifiable federal interest requires otherwise), *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), but the extent to which a debtor's interest in property creates "property of the estate" for turnover purposes is a question of federal law. *See United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Armstrong*, 56 B.R. 781, 785 (W.D.Tenn.1986). Counsel for R.P.I. takes the position and this court agrees that North Carolina is the state whose laws are to be looked to in interpreting the loan documents signed by R.P.I. and Bryn Athyn.

Under North Carolina law, " 'when a debtor conveys land to a creditor by a deed absolute in form and at the same time gives a note or otherwise obligates himself to pay the debt, and takes from the grantee an agreement to reconvey upon payment of the debt, the transaction is a mortgage.' " *Eagle's Nest, Inc. v. Malt*, 70 N.C.App. 397, 400, 319 S.E.2d 685, 687 (1984) (quoting *Ricks v. Batchelor*, 225 N.C. 8, 11, 33 S.E.2d 68, 70 (1945)). "A mortgage or deed of trust to secure a debt passes legal title to the mortgagee or trustee, as the case may be, but the mortgagor or trustor is

looked on as the equitable owner of the land with the right to redeem at any time prior to foreclosure." *Daniel Boone Complex, Inc. v. Furst,* 43 N.C.App. 95, 101, 258 S.E.2d 379, 385 (1979). The mortgagor can redeem title to the property by paying the mortgagee the total amount of the indebtedness owed on the mortgage. *See Webster's Real Estate Law in North Carolina* § 258, at 270 (Hetrick rev. ed. 1981).

When a transaction has the essential attributes of a mortgage, even if it is in a disguised form, North Carolina courts have expressed an unwillingness to deprive the mortgagor of his right of redemption. "If a transaction be a mortgage in substance, the most solemn engagement to the contrary, made at the time, cannot deprive the debtor of his right to redeem.... Nor can a mortgagor, by any agreement at the time of the execution of the mortgage, that he shall lose his right to redeem if the money be not paid by a certain day, debar himself of such right...." *Ray v. Patterson,* 170 N.C. 226, 228, 87 S.E. 212, 213 (1915). If the transaction is intended as a means of securing a debt, it will be given the effect of a mortgage "despite peculiarities of form or the appearance of a non-security deal." *Eagle's Nest, Inc. v. Malt,* 70 N.C. App. 397, 400, 319 S.E.2d 685, 687 (1984). A leading treatise on North Carolina property law flatly states:

> The right of redemption is an inseparable incident of every mortgage and is jealously guarded by the courts in the exercise of their equitable jurisdiction. No agreement is permitted between a mortgagor and mortgagee at the inception of an instrument in the form of a mortgage security whereby the mortga-

gor waives his equity of redemption in any way.

*Webster's Real Estate Law in North Carolina* § 258, at 270 (Hetrick rev. ed. 1981).

In light of this authority, it is clear that the assignment of rents executed by Bryn Athyn cannot be construed to deny Bryn Athyn its right to redeem its full ownership interest in the property, including the right to possess and collect rents. The Assignment was executed concurrently with the promissory note and states that it is made to provide "additional security" on the note. Any rents collected by R.P.I. pursuant to the Assignment are to be applied to the reduction of the mortgage debt, and the complete satisfaction of the mortgage terms will render the Assignment void. The effect of this Assignment would appear to be to create a security interest for R.P.I. in rents received on the property following default, in addition to its security interest in the title to the property.[4]

R.P.I. concedes that Bryn Athyn retains its equity of redemption, but apparently contends that, by virtue of the Assignment and subsequent revocation of the conditional license, Bryn Athyn's redemption rights no longer extend to the right to possess the property and the right to collect rents.[5] Such a construction would render the debtor's redemption rights worthless, if not incomprehensible. It would also be inconsistent with the provision in the Assignment that the Assignment is to become void upon satisfaction of the mortgage debt. This court concludes that North Carolina law does not permit the debtor's redemption rights to be emasculated by the assignment of rents provision in this case. Since Bryn Athyn still has its full redemption rights, under *Whiting*

---

**4.** The exact scope of any such security interest in the rents is not before the court and therefore will not be addressed in this opinion.

**5.** In support of its position, R.P.I. cites *Matter of P.M.G. Properties,* 55 B.R. 864 (Bankr.E.D.Mich. 1985). The court in that case held that the chapter 11 debtor had no right to use rents as "cash collateral" because its interest in rents had been terminated prior to the commencement of the bankruptcy proceeding by virtue of an as-

signment of rents clause somewhat similar to the one in this case. The *P.M.G.* court did not cite *Whiting Pools,* nor did it discuss whether the debtor's redemption rights under Michigan law constituted a sufficient interest in the property to pull the right to collect rents back into the estate. *P.M.G.* has yet to be followed or cited by any other court. To the extent that it is inconsistent with today's decision, this court believes that *P.M.G.* was wrongly decided.

*Pools* it is entitled to turnover of the apartment complex as long as R.P.I.'s interests are adequately protected. Accordingly,

IT IS HEREBY ORDERED that Hutton/Conam Realty Pension Investors' motion seeking entry of summary judgment in its favor on the complaint filed against it by Bryn Athyn Investors, Ltd. is DENIED.