**In re BETHESDA AIR RIGHTS LIMIT-
ED PARTNERSHIP, Debtor.**

**Bankruptcy No. 90-4-1398-SD.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

July 20, 1990.

Richard H. Wyron, Lerch, Early, Roseman & Frankel, Bethesda, Md., Roger L. Frankel, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for debtor.

Nelson Cohen, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, D.C., Neil D. Bramwell, Associate Counsel, New York Life Ins. Co., New York City, for NYLIFE Funding, Inc.

Craig B. Young, Down, Lohnes & Albertson, Washington, D.C., for Equitable Bank, N.A.

### MEMORANDUM OF DECISION AUTHORIZING USE OF CASH COLLATERAL

E. STEPHEN DERBY, Bankruptcy Judge.

The issue presented here is whether an assignment of rents was effective to trans-

fer the rents absolutely to the lender and thereby to keep the rents from becoming cash collateral property of Debtor's bankruptcy estate.

## Facts

Bethesda Air Rights Limited Partnership (the "Debtor") owns and operates an office, retail and parking complex in Bethesda, Maryland known as the Air Rights Center (the "Property"). NYLIFE Funding, Inc. (the "Lender"), as assignee of New York Life Insurance Company, is the beneficiary under a duly recorded first deed of trust on the Property to secure loans in the principal amount of $71,000,000. Lender is also the assignee under a duly recorded Amended and Restated Assignment of Lessor's Interest In Leases with Assignment of Rents, Income and Cash Collateral dated as of March 2, 1987 (the "Assignment").

Debtor defaulted in October, 1989. In February, 1990, Lender instituted foreclosure proceedings in the Circuit Court for Montgomery County, Maryland, but the scheduled foreclosure sale was prevented by the automatic stay of 11 U.S.C. § 362(a) when Debtor filed this case on April 25, 1990. The foreclosing trustees had also petitioned for the appointment of a receiver to take possession of, collect rents from, and operate the Property; but the request had not been acted on before this case was instituted. However, on April 11, 1990 Lender had sent by certified mail to all tenants of the Property a notice that the loan was in default, that Lender was exercising its right to the assignment of rents, and that, accordingly, all unpaid and future rents were to be made payable to, and delivered to, Lender's designee. Thereafter, Lender collected some, but not all, rents that were due or came due.

Based upon these agreed facts, after argument of counsel, the court concluded for reasons stated in an oral opinion on the record that the rents were cash collateral which Debtor was entitled to use, if it provided Lender with adequate protection. After hearing further evidence, an interim order providing for Debtor's limited use of cash collateral was entered. Although the court determined the issue involving the status of the rents promptly to avoid damage from delay and uncertainty as to which entity was in charge of the Property and rents, the court reserved the right to enter a written opinion to set forth its reasons in greater detail. A final order authorizing the use of cash collateral and granting adequate protection has now been entered following further presentations by the parties.

## Discussion

Debtor moved for authority to use the rents as cash collateral by providing Lender with adequate protection pursuant to 11 U.S.C. §§ 363(a), (c)(2)(B) and (e) and Bankruptcy Rule 4001(b). The rents are essentially Debtor's only source of income to conduct its business of operating the Property.

Lender objected on the ground, *inter alia*, that the rents are not property of the estate and thus not cash collateral, because they were absolutely assigned to Lender by Debtor. Debtor's license to collect the rents was terminated before this case was commenced. Lender contends that since its rights were thereby perfected, Debtor thereafter had no interest in the rents which it was entitled to use.

■ A preliminary issue raised is what law controls. The court concludes that Maryland law controls the nature and substance of the Lender's rights, except as those rights may be modified or delayed by paramount interests in the Bankruptcy Code. The subject assignment is of rents from a Maryland property by a Maryland debtor in connection with a loan secured by the Maryland property. Therefore, Maryland law governs the Lender's substantive rights against the Debtor.

■ The applicable principle is discussed in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In *Butner* the Supreme Court concluded that it was a question of state law whether a mortgagee, which had acquired a second mortgagee during an aborted Chapter XI arrangement proceeding under the Bank-

ruptcy Act, was entitled to the rents collected by the trustee after the mortgagor was adjudicated a bankrupt. The Court acknowledged Congress had the constitutional authority to define a mortgagee's interest in rents earned in a bankruptcy estate, but such power had not been exercised. Therefore, unlike preferential and fraudulent transfers, property interests in rents should be treated uniformly both within and without bankruptcy to reduce uncertainty. As stated by the Court:

"The constitutional authority of Congress to establish 'uniform Laws on the subject of Bankruptcies throughout the United States' would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankruptcy estate. But Congress has not chosen to exercise its power to fashion any such rule. The Bankruptcy Act does include provisions invalidating certain security interests as fraudulent, or as improper preferences over general creditors. Apart from these provisions, however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.

"*Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.* Uniform treatment of property interests by both State and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property." 440 U.S. at 54–55, 99 S.Ct. at 917–18, 59 L.Ed.2d at 141–142. (Emphasis supplied) (Footnotes omitted).

Although *Butner* was decided with reference to the Bankruptcy Act, the principle enunciated remains valid under the Bankruptcy Code. Section 552(b) of the Bankruptcy Code relating to the post petition effect of prepetition security interest provides that a prepetition security interest in rents continues postpetition, except to the extent the court orders otherwise based on the equities of the case, and except as provided in other specifically referenced sections of the Code, including section 363 which governs use of cash collateral. That section provides, in material part:

"(b) Except as provided in sections 363, ... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b).

Whether the Assignment is a security interest or an absolute assignment, state law determines the rights of the Lender in the first instance, except as those rights may be modified by, or subject to, other sections of the Bankruptcy Code. Lender urges this court to follow the reasoning of *Matter of Village Properties, Ltd.,* 723 F.2d 441 (5 Cir.1984). In *Village Properties* the holder of a prepetition lien and collateral assignment of rents in debtor's Texas property was granted relief from the automatic stay and foreclosed. The lienholder then filed a claim asserting a security interest in the rents collected between default and foreclosure, and the debtor objected. Following *Butner, supra,* and applying Texas law, the circuit court affirmed denial of the lienholder's claim to the rents because an assignment was not effective until a mortgagee takes possession of the

property or rents, which the lienholder had not done. In so concluding, the court in dicta stated that an absolute assignment of rentals transfers title and the right to rentals upon default, rather than a security interest; but it acknowledged that "[c]ourts have been reluctant to construe assignment of rents as absolute assignments." *Id.* at 443.

Subsequently, a bankruptcy court applying Texas law did find an absolute assignment of rents and surrender of title which made the rents unavailable for use by debtors as cash collateral. *In re Fry Road Associates, Ltd.*, 64 B.R. 808 (Bankr.W.D. Tex.1986). Accord, *Matter of P.M.G. Properties*, 55 B.R. 864 (Bankr.E.D.Mich.1985) which found a Michigan statute made an assignment of rents automatically effective upon default to terminate mortgagor-debtor's interest in the rents; *Fidelity Bankers Life Insurance Co. v. Williams*, 506 F.2d 1242 (4 Cir.1974) where, in a case under the Bankruptcy Act, the court, expressly assuming the courts of Virginia would enforce the agreements, held that when the bankrupt, in addition to granting a security interest in rents, had signed a supplemental agreement that directly assigned all rents to the mortgagee on default without requiring it to take possession, the mortgagee could recover those rents collected by the trustee in bankruptcy. Merely finding that state law controls the substantive rights of the parties, however, does not resolve the competing interests of state law rights and paramount federal interests expressed in the Bankruptcy Code.

■ Turning to the facts of this matter, the court concludes the Assignment is in substance an assignment as security for a loan, and it is not an absolute conveyance. This conclusion is supported both by the language of the Assignment and by the manner in which it operates. It works in the same manner as a security interest in rents. Substance should prevail over form in this case.

"The law is well settled, the only difficulty being in its application to the facts of each case. 'The question in all such cases is, what is the real substance of the transaction, and not what color or form it has assumed.' *Rouskulp v. Kershner*, 49 Md. 524.

"Where, on all the facts and circumstances, it is apparent that the transfer of property [therein real property subject to a mortgage] is intended as security for a loan, courts will go behind the form, however skillful the disguise may be, and hold the transaction to be what it really is."

*Bailey v. Poe*, 142 Md. 57, 69, 120 A. 242, 247 (1923).

■ A deed absolute on its face will be treated as a mortgage conveying a security interest in collateral if it is shown to have been intended merely as security for a debt. *See, id.; Foard v. Snider*, 205 Md. 435, 442–444, 109 A.2d 101, 104 (1954) (dicta), where the court found a deed was an absolute conveyance and not intended as security; *Lednum v. Barnes*, 204 Md. 230, 241–242, 103 A.2d 865, 870 (1954); *Thomas v. Klemm*, 185 Md. 136, 139, 43 A.2d 193, 195 (1945). The principle is codified in Maryland's Real Property Article.

"(a) *When deed absolute in terms to be considered a mortgage*—Every deed which by any other writing appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant, is considered a mortgage...." Md. Real Prop.Code Ann. § 7–101(a) (1988 Repl.Vol.).

Deed includes a lease and an assignment "... pertaining to land or property or any interest therein or appurtenant thereto." *Id.* at § 1–101(c).

The parties are defined and referred to throughout the Assignment as Borrower and Lender. The last WHEREAS clause describes the purpose of the Assignment as "... in order to further secure the repayment of the Consolidated Indebtedness by Borrower." The TO HAVE AND TO HOLD clause for the assignment is "... as security for the payment of the principal and interest provided to be paid in or by Borrower's Consolidated and Restated Promissory Note ... and for the performance of the agreements of Borrower con-

tained in the Deed of Trust ...". The second covenant of Borrower refers to Event of Default, which is a lending concept, and provides that in the event of a default "... and until such default shall have been fully cured, the license reserved herein by Borrower [to collect rents] shall cease and terminate, ...". In other words, the Borrower's right to collect is only terminated for short periods necessary to cure a default in a loan document, and it follows that the rents will be collected by Lender only insofar as is necessary to pay what is then due on the loan obligation.

The purpose of the Assignment is further clarified in Borrower's second covenant where it states: "It is the intention of the parties that Lender's right to collect Rents due and owing may be exercised, without electing to exercise Lender's right to enter, take over and assume the management, operation and maintenance of the Secured Property." Lender is allowed contractually to act with respect to its rent collateral without any responsibility for managing or maintaining the property which generates the rents. The Lender has contractual right to take all the money generated by the property and allow the property to waste without any source of revenue to maintain it. Not only is this a concept of debt collection rather than absolute ownership, but it is inherently inequitable to other creditors and interest holders whose beneficial values would be destroyed thereby, but might be saved through a Chapter 11 reorganization.

The second Borrower covenant continues: "Lender is empowered but shall be under no obligation, to collect the Rents, ...". Lender would only collect those rents it chooses to collect to repay the loan, and it does not lay claim to the rents it elects not to collect. Again, this is a collateralized loan concept in operation, and not an absolute ownership concept.

Additionally, "Lender shall from time to time apply the net amount of income after payment of all proper costs and charges, including loss or damage referred to in paragraph 6 hereof [indemnification of Lender by Borrower for lease obligations],

and including reasonable attorneys fees, to the sums then due to Lender under Note and Deed of Trust." *Id.* The obligation of Lender in the event of default is thus to use the rents it collects to repay the loan and protect itself, and there is no obligation to manage and maintain the underlying property or to honor the lease agreement obligations which are incurred as the result of the rent payments. This disassociation of collection of rents to repay a loan from the associated obligation to deliver what is due in return for the rents is inconsistent with ownership and title to the rents and suggests they are in fact security for repayment of the loan.

The third covenant of Borrower is an agreement by Lender that: "Upon payment to Lender of the full amount of the indebtedness secured by the Deed of Trust as evidenced by a recorded satisfaction or release of the Deed of Trust, this Assignment shall be void and of no effect." The Assignment ends upon repayment of the loan. This trigger for termination of the assignment is identical to the trigger which would terminate and release a security interest. Absent a gift to the Borrower, which is not suggested, this is not a trigger one would expect to terminate absolute ownership.

The Assignment provides in the fourth covenant that: "Upon the curing of all Events of Default of the payments due under or in the performance of any of the terms, covenants, or conditions of the Note or the Deed of Trust, Lender shall given written notice thereof to lessee and thereafter, until further notice from Lender, lessee shall pay the Rents to Borrower." When Borrower has cured its payment defaults, it again becomes entitled to collect all rents as owner of the property. Again, this is a Lender security concept rather than absolute ownership by the Lender.

Other paragraphs refer to the rents as security. Paragraph 12 provides that "... the Loans and the benefits hereby assigned shall continue as additional security in accordance with the terms of this Assignment." Pursuant to paragraph 13, "Lender may take security in addition to the

security already given Lender for the payment of the principal and interest ...". Paragraph 18 refers in several instances to "other collateral" than that described in the deed of trust.

The absolute assignment language on which the Lender relies does not dictate a contrary result. The operative language of the Assignment is:

"BY THIS ASSIGNMENT, [Debtor/Borrower] ... hereby assigns, conveys, transfers and sets over unto [Lender], ... all the right, title and interest of Borrower in and to all leases, subleases, tenancies and other agreements affecting the use of the Secured Property....

"TOGETHER with the immediate and continuing right to collect and receive all the rents,...."

While this language of assignment is without reservation, it is placed in context by the preceding clause, namely, "as an inducement for the making of the loan evidenced and secured as hereinafter described, ...". This language leaves open that the assignment may be for security. There follows the statement that—

"This Assignment is intended to be an absolute assignment from Borrower to Lender and not merely the passing of a security interest, Borrower reserving, however, a license to collect, except as hereinafter provided, the Rents, as they respectively become due,...."

This is a statement of intent, and not operative language. It is inconsistent with the operative language described previously. To conclude otherwise would leave the borrower with the responsibility to maintain the property and generate the rents, but without the right to the rental income to fulfill its responsibilities.

■ Having found Lender's interest in the rents is a security interest, Lender's rights are no greater than those of a mortgagee with a security interest in rents under Maryland law. Maryland, as is Virginia, is a so-called title theory state as to mortgages. A mortgage instrument (or deed of trust) conveys legal title to the real property to the mortgagee, but the mortgagee's title is not absolute and is treated in equity as security for payment. The conveyance is defeated upon performance; and the mortgagor is entitled to possession and the trappings of ownership until default, subject to the rights of the mortgagee. As explained in *Williams v. Safe Deposit & Trust Co.*, 167 Md. 499, 503–504, 175 A. 331, 333 (1934):

"At common law, a defeasible legal estate vested in the mortgagee, that became absolute upon default. The mortgagee is entitled to immediate possession upon the execution of a mortgage, unless there is some other agreement of the parties. [citations omitted]

"Equity, however, has assumed jurisdiction to relieve the mortgagor against an absolute forfeiture upon his default in performing the condition subsequent, and, recognizing that the purpose of the mortgage is merely a pledge to secure a debt, and that it is unreasonable that the mortgagee should, on the failure of the debtor to meet his obligation to pay on the day specified, be entitled to acquire, as his own property, what was intended as a security for its payment, has allowed the mortgagor to reclaim the property upon the payment of the mortgage debt with interest. [citation omitted]

"Accordingly, there is usually incorporated in a mortgage of a leasehold estate, as was incorporated in the mortgage at bar, a provision whereby the mortgagors, their personal representatives and assigns, may continue to hold and possess the mortgaged premises, and to receive the rents and profits thereof, upon paying in the meantime the ground rent, and all taxes levied or assessed on the mortgaged property, with a covenant on the part of the mortgagors, their personal representatives and assigns, to pay the ground rent and taxes. The effect of this agreement on the part of the mortgagee, which is known as a redemise, is to make of the mortgagor, in most respects, a tenant to the mortgagee. [citations omitted]

"Through the right of possession until default under the mortgage, and the equity of redemption, the mortgagor is now

regarded as the real and beneficial owner of the mortgaged premises as to all persons except the mortgagee and those claiming under him, yet to create the mortgage as security for the mortgage debt there must be a transfer of the mortgagor's estate in the property pledged to the mortgagee. So, in Maryland, a mortgage conveys the whole legal estate to the mortgagee, subject, generally, to the condition subsequent that, upon due payment of the mortgage debt and a performance of all the covenants by the mortgagor, the mortgage deed is avoided." [citations omitted]

See also *Butner v. United States, supra,* 440 U.S. at 52, 99 S.Ct. at 916, 52 L.Ed.2d at 140, where the Court observed: "In a few States, sometimes referred to as 'title states,' the mortgagee is automatically entitled [upon default] to possession of the property, and to a secured interest in the rents."

Upon the mortgagor's default, under Maryland law the general rule is that the mortgagee has the right to possession of the property and to the rents upon demand. *Baker v. Baker,* 108 Md. 269, 276–278, 70 A. 418 (1908); *Barron v. Whiteside,* 89 Md. 448, 460–464, 43 A. 825 (1899); *Clark v. Abbott,* 1 Md. Ch. 478 (1849). Until demand after default, the mortgagor retains the right to possession and to the rents. *Barron v. Whiteside, supra,* 89 Md. at 461, 43 A. 825. To end the mortgagor's right to collect rents, only slight acts to manifest the mortgagee's intention to do so are required. *Id.* at 461–462, 43 A. 825; *Baker v. Hill,* 100 Md. 130, 59 A. 275 (1904). Here Lender satisfied that requirement by putting the lessees on notice and directing that the rents be paid to its designee. After adequate demand, the mortgagee has "... as valid a lien on the rents of the mortgaged premises thereafter received by him [the assignee of the mortgagor for the benefit of creditors], as she had by virtue of her mortgage upon the premises themselves." *Barron v. Whiteside, supra,* 89 Md. at 463–464, 43 A. 825. However, it appears the mortgagee may be required to account for the rents collected. *Baker v. Baker, supra,* 108 Md. at 277, 70

A. 418. This obligation confirms that the rents are in the nature of security, and are not owned by a mortgagee upon demand.

To conceptualize this court's view of the rights of a mortgagee secured by rents, the mortgagee's inherent rights are established against the world when the mortgage (or deed of trust) is recorded, but the right to possession of the rents, i.e. distribution, is not perfected until demand after default. Here the Lender (mortgagee) perfected its rights to possession of the rents before the bankruptcy case was filed, and it is entitled to retain all rents collected after demand and prior to the filing of the petition which initiated this case, whether collected by Lender or by Debtor.

Because they are treated as security under state law, rents collected post-petition are cash collateral which Debtor may use if it provides adequate protection to Lender. 11 U.S.C. § 363(a), (c)(2)(B) and (e). Since the rents are security for repayment of the Debtor's obligations to the Lender for which the Lender could be made to account if it received the rents, Debtor retains an equitable interest in the rents which makes them property of the bankruptcy estate. The Property was not foreclosed prior to the petition. As the Debtor retained an equitable interest in the Property as of the commencement of the case, the Property is property of the estate. 11 U.S.C. § 541(a). Under 11 U.S.C. § 541(a)(6), "[p]roceeds, ... rents, and or profits of or from property of the estate, ..." are also property of the bankruptcy estate. This includes the rents collected postpetition which secure Lender's debt, and they are denominated as cash collateral. 11 U.S.C. § 363(a).

This court concludes that the postpetition rents from the Property are property of Debtor's bankruptcy estate under 11 U.S.C. § 541(a)(6), that Lender's rights to the postpetition rents under 11 U.S.C. § 552(b) is subject to 11 U.S.C. § 363, that under 11 U.S.C. § 363(a) they constitute cash collateral, and that under 11 U.S.C. §§ 363(c)(2)(B) and (e) Debtor may be authorized to use postpetition rents if it pro-

vides adequate protection to Lender. Alternatively, although Lender seized the rents and perfected its interest in the rents prepetition, the doctrine enunciated by the Supreme Court in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) compels the same result. Accord, *In re Bryn Athyn Investors, Ltd.,* 69 B.R. 452 (Bankr.E.D.N. C.1987).

In *Whiting Pools* the IRS had seized debtor's property prepetition to satisfy a tax lien, and after filing a Chapter 11 reorganization petition, the debtor sought a turnover of the seized property pursuant to 11 U.S.C. § 542(a). Here, as in *Whiting Pools,* the property seized, namely, the rents, is essential to operation of Debtor's business and to its reorganization since Debtor's business is operation of the Property.

The Supreme Court in *Whiting Pools* concluded "... that the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *Id.,* 462 U.S. at 209, 103 S.Ct. at 2315, 76 L.Ed.2d at 524. The Court reasoned, *inter alia:*

"By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners.... The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate." *Id.,* 462 U.S. at 203, 103 S.Ct. at 2312–13, 76 L.Ed. at 521.

\* \* \* \* \* \*

"Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule [that an entity turn over property of the estate], and therefore may be drawn into the estate." *Id.,* 462 U.S. at 205–206, 103 S.Ct. at 2314, 76 L.Ed. at 522.

\* \* \* \* \* \*

"In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor at the commencement of reorganization proceedings. *The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.*" *Id.,* 462 U.S. at 207, 103 S.Ct. at 2314–15, 76 L.Ed.2d at 523 (Emphasis supplied).

In justifying application of these principles to IRS, the Court in *Whiting Pools,* noted that at no point did the interest of the IRS in the property exceed the value of the lien and that the IRS was obligated to return to the debtor any surplus from sale. *Id.,* 462 U.S. at 211, 103 S.Ct. at 2317, 76 L.Ed.2d at 526. The same result pertains here by the terms of the Assignment. Although in *Whiting Pools* the Court further noted that ownership in the seized property would not be transferred until the tax sale, even if Lender in the instant case was found to have perfected legal title to the rents, at no point did Lender's interest exceed the debt, and Lender was obligated to return the surplus rents after repayment. The substantive effect is the same. Debtor must have the rents to operate and to exercise the opportunity provided by Chapter 11 of the Bankruptcy Code to reorganize, and Lender is entitled to adequate protection for use of the rents for these purposes. If adequate protection is provided, the Bankruptcy Code imposes delay on the exercise of state law rights in order to facilitate the goal of reorganization. Any other result would mean there is nothing to reorganize.

Finally, to uphold an absolute right of Lender to postpetition rents would foster races to the courthouse prematurely. That is, can Lender demand rents before Debtor files a petition under the Bankruptcy Code. The Bankruptcy Code is structured to promote equitable treatment of all creditors, consistent with their priorities; and it contains many provisions which neutralize actions by a creditor to obtain advantage over other creditors (or a debtor) shortly prior to the filing of a bankruptcy case. *E.g.,* 11 U.S.C. §§ 545 (statutory liens), 547 (preferential payments), 548 (fraudulent trans-

fers), 553(b) (improvement of position by set off).

For these reasons, the court concludes the rents are cash collateral, but that Lender is entitled to adequate protection for their use by Debtor.