In re FAIRVIEW–TAKOMA LIMITED
PARTNERSHIP, Debtor.

Bankruptcy No. 96–1–7995–DK.

United States Bankruptcy Court,
D. Maryland.

March 5, 1997.

Joyce A. Kuhns, Baltimore, MD, for debtor.

Nancy Alquist, Baltimore, MD, for creditor (Condor One).

J. Joseph Curran, Jr., Attorney General, Annapolis, MD.

Robert A. Zarnoch, Kathryn M. Rowe, Annapolis, MD, Office of Counsel to the General Assembly.

## MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

Fairview–Takoma Limited Partnership ("Fairview") is the owner of an apartment complex located in Takoma Park, Maryland (the "Property"). Fairview is the obligor under certain promissory notes, including a Deed of Trust Note dated February 20, 1986, in the original principal amount of $6,500,000 (the "Original Note"), a Supplemental Deed of Trust Note dated October 22, 1986 in the original principal amount of $1,000,000 (the "Supplemental Note"), and a Modification and Consolidation of Deed of Trust Notes dated October 22, 1986 (the "Consolidated Note"). The Original Note and the Supplemental Note were merged and consolidated with the Consolidated Note. The Consolidated Note is secured by, *inter alia*, a Modification and Consolidation of Deeds of Trust and Substitution of Trustees (the "Deed of Trust") dated October 22, 1986 and recorded in the Land Records of Prince George's County, Maryland on or about October 29, 1986; and a Collateral Assignment of Leases and Rents (the "Assignment of Rents") dated October 22, 1986 and recorded in the Land Records of Prince George's County, Maryland on or about October 26, 1986 (collectively referred to herein as the "Loan Documents").

Subsequent to an auction of defaulted loans held in August of 1996, the Secretary of the Department of Housing and Urban Development ("HUD") assigned and transferred the Consolidated Note to Lennar Atlantic Partners Limited Partnership ("Lennar"). Lennar, in turn, by assignment dated September 12, 1996, assigned the Consolidated Note to Condor One, Inc. ("Condor"). Condor is the current holder and assignee of the Consolidated Note, Deed of Trust, and Assignment of Rents.

On September 26, 1996, Condor contacted Fairview via a hand-delivered letter in which Condor asserted that Fairview had defaulted under the Consolidated Note and Loan Documents, and that Fairview's entire indebtedness thereunder had been accelerated and was therefore immediately due and payable. On September 27, 1996, Condor commenced an action in the Circuit Court for Prince George's County for the immediate appointment of a receiver for the Property pending foreclosure. At 3:48 p.m. on September 27, 1996, Fairview filed a petition for relief under Chapter 11 of the Bankruptcy Code.[1] Pursuant to 11 U.S.C. § 362(a)(1), Condor's state law action to appoint a receiver for the Property was stayed by Fairview's bankruptcy petition.

The dispute presently before the Court concerns Fairview's right to use the rents and other income (the "Rents") generated by the Property. Condor contends that it holds, pursuant to the terms of the Loan Documents, a lien interest in the Rents, and that the Rents are therefore cash collateral within the meaning of 11 U.S.C. § 363(a). Fairview disputes that Condor has a "perfected" lien upon the Rents on the ground that Condor failed to give Fairview proper notice of default, in accordance with the terms of the Loan Documents, prior to the filing of Fairview's bankruptcy petition. Consequently, Fairview asserts that it has an unfettered right to use the Rents in its ordinary course of business. *See* 11 U.S.C. § 363(b). In the alternative Fairview avers that even if Condor has a lien upon the Rents, the Rents are Fairview's sole source of funds, and that Fairview requires the use of the Rents in order to pay the ongoing costs of maintaining and operating the Takoma Park apartment

1. 11 U.S.C. §§ 101–1330.

complex. Fairview alleges that the maintenance and operation of the complex provides adequate protection to Condor for the requested use of the funds. *See* 11 U.S.C. § 363(c).

Section 363(a) of the Bankruptcy Code defines cash collateral as

cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents,* or profits of property ... *subject to a security interest as provided in section 552(b) of this title,* whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis supplied). Thus the Rents are cash collateral to the extent that both Condor and Fairview's bankruptcy estate hold an interest in the Rents, and to the extent that the Rents are subject to a security interest as provided in § 552(b) of the Bankruptcy Code.

The parties do not dispute that Fairview's bankruptcy estate has an interest in the Rents. Upon the filing of Fairview's bankruptcy petition, Fairview's equitable interest in the Takoma Park Property became property of the estate. 11 U.S.C. § 541(a)(1). Pursuant to § 541(a)(6), the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" also constitute property of the estate. Therefore, the Fairview estate has an interest in the Rents.

Rather, the issue which is at the heart of the dispute between Fairview and Condor is whether Condor holds an "interest" in the Rents that is recognized by § 363(a) of the Bankruptcy Code. In order to decide this issue, the Court must consider Maryland State law, significant changes both to federal and Maryland state law which impact the vitality of a mortgagee's lien interest in rents in the context of a bankruptcy case, and the applicability of those changes in the law to the matter at hand.

An analysis of the validity or extent of Condor's interest in the Rents begins with the Loan Documents. The second covenant of the Deed of Trust provides:

[t]hat all rents, profits and income from the property covered by this Deed of Trust are hereby assigned to the Beneficiary for the purpose of discharging the debt hereby secured. Permission is hereby given to Grantor, so long as no default exists hereunder, to collect such rents, profits and income.

Covenant five of the Deed of Trust provides "[t]hat upon default hereunder Beneficiary shall be entitled to the appointment of a receiver ... without notice, to take possession and protect the property described herein and operate same and collect the rents, profits and income therefrom."

The Assignment of Rents, meanwhile, provides that "the Assignment is made for the purpose of securing ... [t]he payment of the principal sum, interest and indebtedness evidenced by" the Deed of Trust. The Assignment of Rents further provides in the first covenant that:

[s]o long as there shall exist no default by the Assignor in the payment of the principal sum, interest and indebtedness secured hereby and by the Note and Mortgage, or in the performance of any obligation, covenant or agreement herein or in the Note and Mortgage contained on the part of the Assignor to be performed, the Assignor shall have the right to collect ... all rents arising from the Project, and to retain, use and enjoy the same.

The second covenant of the Assignment of Rents provides that in the event of a default by the Assignor (*i.e.* Fairview), the Assignee (*i.e.* Condor) "may, at its option, with notice and without regard to the adequacy of the security for the said principal sum ... and, either with or without taking possession of the Project in its own name, demand, sue for or otherwise collect and receive all rents of the Project...."

The Loan Documents clearly convey an interest in the Rents to Condor under state law. Pursuant to the terms of the Deed of Trust and Assignment of Rents, Condor holds a lien against the Rents which secures Fairview's indebtedness under the Consolidated Note. Condor's interest in the Rents

is not an absolute assignment, but rather is in the nature of a security interest. *See Prudential Ins. Co. v. Three Flint Hill Ltd. Partnership (In re Three Flint Hill Ltd. Partnership)*, 202 B.R. 706, 711 (Bankr. D.Md.1995); *In re Bethesda Air Rights Ltd. Partnership*, 117 B.R. 202, 206–08 (Bankr. D.Md.1990); *In re 1301 Connecticut Avenue Assocs.*, 117 B.R. 2, 4–8 (Bankr.D.D.C.1990), *aff'd*, 126 B.R. 1 (D.D.C.1991). Fairview retains the right to collect and use the Rents generated by the Property as long as it has not defaulted under the terms of the Loan Documents. In the event of a default by Fairview, Condor may take appropriate measures to collect and receive the Rents.

 For three alternative reasons, as explained in this Opinion, the Court concludes that Condor holds an interest for purposes of security in the Rents generated by the Property post-petition, and thus Fairview's right to use such Rents is conditioned upon providing adequate protection to Condor. The Court reaches this conclusion because the assignment interest in the Rents held by Condor is sufficient, without the requirement of any further act to enforce that security interest, to meet the requirements of 11 U.S.C. §§ 363(a) and 552(b)(2), and to escape the avoidance provisions of § 544(a), notwithstanding Fairview's argument that prior reported cases in this district have held to the contrary. Alternatively, the Court finds that § 3–204 of the Real Property Article of the Maryland Code, which is remedial legislation enacted by the State of Maryland for the express purpose of addressing the precise issue presently before the Court, clarifies the law which the Court applies to reach this result, and is properly applicable to the facts of this case. In the third alternative, the Court finds that the addition of subsection (b)(2) to 11 U.S.C. § 552 pursuant to the Bankruptcy Reform Act of 1994 mandates the same result, and that the federal statute as amended is properly applicable to this bankruptcy case.

In the 1990 case of *Diversified Lending Services, Inc. v. Bond (In re Bond)*, 122 B.R. 39 (D.Md.1990), the United States District Court for the District of Maryland opined that an assignment of rents recorded before a bankruptcy but upon which no pre-petition action had been taken to enforce a possessory right to rents, was not "perfected" so as to be entitled to cash collateral protection in a Chapter 11 case. *See id.* at 40 (citing *In re Prichard Plaza Assocs. Ltd. Partnership*, 84 B.R. 289, 294–99 (Bankr.D.Mass.1988)). No discussion is contained in that opinion concerning the requirements of § 363(a) of the Bankruptcy Code, which must be satisfied in order for a lender's interest in post-petition rents to be sufficient to cause such rents to be cash collateral.

In another 1990 decision, the United States Bankruptcy Court for the District of Maryland opined that an interest in an assignment of rents made for the purpose of securing a loan is in the nature of a lien and not an absolute assignment or transfer of the rights to those rents. *In re Bethesda Air Rights Ltd. Partnership*, 117 B.R. 202 (Bankr.D.Md. 1990) (Derby, J.). Further, this Court held that where the lender had made demand for possession of the rents after default of the borrower, but prior to the petition in bankruptcy, the lender's right to possession of the rents was "perfected." *Id.* at 209 ("[T]he right to possession of the rents, *i.e.* distribution, is not *perfected* until demand after default.") (emphasis supplied).

The term "perfection" is a creature of the Uniform Commercial Code, and as such does not truly apply to the law of real property. *See* Md.Code Ann., Com. Law § 9–104(j) (1992) ("This title does not apply ... [e]xcept to the extent that provision is made for fixtures in § 9–313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder....."). Notwithstanding this fact, many courts, including the bankruptcy court in *Bethesda Air Rights* and the district court in *Bond*, use the borrowed term "perfected" to describe the status of a mortgagee's security interest taken pursuant to an assignment of rents. Significantly, however, the Maryland bankruptcy court and district court have each used the term "perfected" to describe different legal events. In *Bond*, the district court used the term to designate the point at which an interest in rents becomes entitled to adequate protection before "cash collateral" may

be used. Conversely, in the *Bethesda Air Rights* decision, the bankruptcy court used the term "perfected" to describe the point at which a present possessory right to the rents becomes enforceable by the lender. Without regard to this important distinction, the *Bethesda Air Rights* decision has been cited for the proposition that it defines the ultimate act necessary before an interest in an assignment of rents becomes entitled to adequate protection under the holding of *Bond*.[2]

In the case of *In re Prichard Plaza Associates Ltd. Partnership,* upon which the district court's holding in *Bond* is based, the Bankruptcy Court for the District of Massachusetts held that under Massachusetts law, a mortgagee had no right to collect rents unless and until the mortgagee took possession of the premises after default by the mortgagor. *Prichard,* 84 B.R. at 297. In effect, the court found that a mortgagee's interest under an assignment of rents, which could not be enjoyed by the mortgagee until after default and enforcement of that interest by obtaining possession of the premises, was tantamount to a springing lien. Where a bankruptcy was filed prior to the mortgagee gaining the right of possession, the operation of the automatic stay provisions of 11 U.S.C. § 362(a) stayed the right of the mortgagee to take that action required under state law to acquire possessory rights in the premises. Because the court found that in Massachusetts the mortgagee held no interest in rents until the right of possession was acquired, no interest existed on the date of the petition which was entitled to adequate protection as set forth in 11 U.S.C. § 363. *Id.* at 300.

On the other hand, a detailed examination of Maryland law and a careful reading of Judge Derby's opinion in *Bethesda Air Rights,* yields an opposite conclusion. In *Bethesda Air Rights,* the Court carefully reviewed Maryland property law to determine the extent of the interests held by the respective parties to a mortgage, as required by the Supreme Court's holding in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See Bethesda Air*

*Rights,* 117 B.R. at 204–09. The Court found that an assignment of a right in rents, notwithstanding that it appeared absolute on its face, conveyed a "security interest" in the collateral if the assignment was intended merely as security for a debt. *Id.* at 208. Thus, contrary to the holding in *Prichard,* this Court found that under Maryland law the mortgagee may hold an interest in rents which is less than an absolute assignment, but nonetheless viable. Furthermore, in the *Bethesda Air Rights* decision, the Court clearly distinguished between the granting of an interest in rents on the one hand, and the enforcement of that interest on the other hand. The transfer of an interest in rents occurs when the document conveying that interest is signed, delivered and recorded. *Id.* at 209. The Court concluded that an assignment of rents, prior to default and the taking of any necessary acts to enforce the possessory rights of the mortgagee, are nonetheless "established against the world when the mortgage (or deed of trust) is recorded...." *Id.; accord J.H. Streiker & Co. v. SeSide Co. (In re SeSide Co.),* 152 B.R. 878, 884 (E.D.Pa.1993) (examining distinction between "perfection" and "enforcement" of an assignment of rents); *In re Rancourt,* 123 B.R. 143, 148 (Bankr.D.N.H.1991) (recognizing distinction); *In re Park At Dash Point, L.P.,* 121 B.R. 850, 853 (Bankr.W.D.Wash. 1990) (recognizing distinction), *aff'd,* 152 B.R. 300 (W.D.Wash.1991), *aff'd,* 985 F.2d 1008 (9th Cir.1993).

Under Maryland law, a right in the rents generated by real property is generally transferred under a deed of trust or mortgage as a part of the conveyance of the title of the property. Ordinarily, a conveyance made under a deed of trust for security purposes reserves to the mortgagor/grantor the right of possession of the property until default. *See Barron v. Whiteside,* 89 Md. 448, 460, 43 A. 825 (1899). Since the right to collect rents arises from the right to possession of the property (and the consequent right to grant such possession to others un-

---

**2.** This reading of *Bethesda Air Rights* is not correct. As will be discussed subsequently in this Memorandum of Decision, the misapprehension and/or confusion as to this Court's holding in

*Bethesda Air Rights* and the district court's holding in *Bond* ultimately caused the Maryland General Assembly to enact remedial legislation. *See* Md.Code. Ann., Real Prop. § 3–204 (1996).

der leases), the mortgagor is entitled to collect rents until default. *Id.* at 461, 43 A. 825.

■ The demarcation line for determining whether an interest in rents is entitled to adequate protection as cash collateral is set forth in the Bankruptcy Code, not state law, and only has meaning upon the filing of a bankruptcy case. Post-petition rents are the subject of such an interest if the interest has the necessary characteristics specified in 11 U.S.C. § 363(a). Section 363(a) includes in the definition of cash collateral "rents ... subject to a security interest as provided in section 552(b) of this title...." 11 U.S.C. § 363(a). Section 552(b)(2) provides that a security interest taken against property and the rents of such property pursuant to a pre-petition security agreement extends to the rents acquired by the estate post-petition, except as provided in, *inter alia*, § 544 of the Bankruptcy Code. Section 544(a) in turn authorizes a trustee or Chapter 11 debtor-in-possession [3] to exercise the "strong-arm" powers of a hypothetical lien creditor and avoid certain unperfected security interests. 11 U.S.C. § 544(a)(1) & (a)(3).[4]

■ An interest, including a lien, held by a creditor is avoidable by the trustee under § 544(a)(1) & (a)(3) if, on the date of the petition, that interest could be primed in priority by the judgment lien obtained on the petition date by a hypothetical judicial lien creditor or a bona fide purchaser of real property. In other words, an interest in rents arising from real property after the date of the bankruptcy petition will be entitled to the protection of the cash collateral provisions of § 363(a) if such interest is sufficient under state law on the date of the petition to supersede judicial liens and the interests of any bona fide purchasers as of that date.[5] As held by this Court in *Bethesda Air Rights*, a recorded interest in rents arising from an assignment of rents (and presumably arising from a deed of trust as well) is good against the world, *i.e.* cannot be primed by a judicial lien-holder or bona fide purchaser whose rights arise after recordation. *Bethesda Air Rights*, 117 B.R. at 209. Thus, the test for whether an interest in rents constitutes cash collateral is satisfied upon the recordation of the granting instrument, without regard to the enforceability of possessory rights and predicate acts necessary to enforce those rights. *See SeSide Co.,* 152 B.R. at 885; *Rancourt*, 123 B.R. at 148. The failure to enforce a security interest in rents does not nullify or extinguish that interest. *See Vienna Park Properties v. United Postal Sav. Assoc. (In re Vienna Park Properties)*, 976 F.2d 106, 112 (2d Cir.1992); *Rancourt*, 123 B.R. at 148.

There is no dispute that the Deed of Trust and Assignment of Rents executed by Fairview and ultimately assigned to Condor were both duly recorded in the Land Records of Prince George's County in October of 1986. Accordingly, without even considering the subsequent federal and Maryland state legislation enacted for the explicit purpose of addressing this issue, the Court finds that Condor holds an interest in the post-petition Rents as security for its loan and is entitled to the protections of § 363(a) before Fairview may use these Rents. In addition, Rents paid pre-petition but held in segregated reserve accounts, and the identifiable proceeds of such pre-petition Rents, are also impressed with the lien under the Assignment of Rents, notwithstanding that they were collected before the right of possession was triggered. As a result, Condor also holds a lien against the pre-petition Rent proceeds, and the use of such pre-petition, identifiable proceeds must be conditioned upon the provision of adequate protection as required by § 363(c). This conclusion is entirely consistent with this Court's decision in *Bethesda Air Rights*.

Accordingly this Court must respectfully disagree, and consequently does not adopt,

---

3. With certain exceptions not relevant here, a Chapter 11 debtor-in-possession has all of the rights, powers and duties of a trustee serving in a case under Chapter 11. *See* 11 U.S.C. § 1107(a).

4. *See Glanz v. RJF Int'l Corp. (In re Glanz)*, 205 B.R. 750 (Bankr.D.Md.1997).

5. The creditor's interest in post-petition rents, is also subject to the court's power to alter or modify that interest based on the "equities of the case...." 11 U.S.C. § 552(b)(2).

the district court's holding in *Bond* that "a prior recorded assignment of rents, without any action taken to realize thereon prepetition, is not perfected so as to be entitled to cash collateral protection in a Chapter 11 proceeding." *In re Bond*, 122 B.R. 39, 40 (D.Md.1990). For whatever reason, Judge Derby's decision in *Bethesda Air Rights* has been largely misunderstood by the practicing bar as holding exactly as the district court did in *Bond*. This fact is evident in the pleadings before the Court on this matter, and in fact forms the basis of Fairview's argument that the Rents are not cash collateral because Condor failed to give proper notice of default in accordance with the terms of the Loan Documents. The uncertainty concerning the appropriate test for determining whether a mortgagee's interest in rents was entitled to treatment as cash collateral in the mortgagor's bankruptcy case, as reflected in the conflicting decisions in the *Bond* and *Bethesda Air Rights* cases, has been clarified by legislation recently enacted by the General Assembly of Maryland and the United States Congress. This legislation compels this Court to reach the same conclusion that it reaches hereinabove: Condor holds an interest in both the pre- and post-petition rents generated by the Property.

■ Because of the decision in *Bond*, decisions in other jurisdictions which reached results similar to the holding in *Bond*,[6] and decisions in other jurisdictions which reached the same result as this Court does today,[7] there was great uncertainty surrounding the issue of cash collateral treatment for post-petition rents. Pursuant to the Bankruptcy Reform Act of 1994, Congress amended the Bankruptcy Code in order to eliminate this uncertainty and clarify the appropriate treatment of a security interest in rents subse-

quent to the commencement of a bankruptcy case by a mortgagor.

The Supreme Court, in the case of *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), held that the determination of the validity and extent of a mortgagee's interest in the assets of a bankruptcy estate, including an interest in rents generated by the mortgaged property, is governed by state law. *Id.* at 54, 99 S.Ct. at 917–18. In 1994, however, Congress amended the Bankruptcy Code to eliminate the consideration of "perfection" issues under state law in assessing the validity of mortgagee's security in rents earned by the bankruptcy estate subsequent to the commencement of a bankruptcy case. Bankruptcy Reform Act of 1994, Pub.L. 103–394 (Oct. 22, 1994) (the "1994 Reform Act"). To accomplish this, Congress amended § 552, which determines the post-petition effect of security interests, by adding subsection (b)(2). The amended statute provides, in material part, that:

> [e]xcept as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property ... then such security interest extends to such rents ... acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2). Under the pre-amendment version of the statute, the question of whether a pre-petition security inter-

---

**6.** *See, e.g., In re Wynnewood House Assocs.*, 121 B.R. 716 (Bankr.E.D.Pa.1990); *In re Multi-Group III Ltd. Partnership*, 99 B.R. 5 (Bankr. D.Ariz.1989); *In re Association Center Ltd. Partnership*, 87 B.R. 142 (Bankr.W.D.Wash.1988); *In re TM Carlton House Partners, Ltd.*, 91 B.R. 349 (Bankr.E.D.Pa.1988); *Northwestern Nat'l Life Ins. Co. v. Metro Square (In re Metro Square)*, 93 B.R. 990 (Bankr.D.Minn.1988), *rev'd*, 106 B.R. 584 (D.Minn.1989).

**7.** *See, e.g., In re Vienna Park Properties*, 976 F.2d 106 (2d Cir.1992); *Midlantic Nat'l Bank v. Sourlis*, 141 B.R. 826 (D.N.J.1992); *In re KNM Roswell Ltd. Partnership*, 126 B.R. 548 (Bankr. N.D.Ill.1991); *In re Rancourt*, 123 B.R. 143 (Bankr.D.N.H.1991); *In re Park At Dash Point L.P.*, 121 B.R. 850 (Bankr.W.D.Wash.1990), *aff'd*, 152 B.R. 300 (W.D.Wash.1991), *aff'd*, 985 F.2d 1008 (9th Cir.1993).

est extended to post-petition rental income was determined according to the "security agreement and by applicable non-bankruptcy law...." *See* 11 U.S.C. § 552(b) (1984), *amended by* 11 U.S.C. § 552(b)(2) (1994). Congress amended the statute in 1994 by adding § 552(b)(2), a subsection that treats rents separately from other types of collateral. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 214(a), 108 Stat. 4126 (1994) (codified as amended at 11 U.S.C. § 552(b)(2) (1994)). The amended § 552(b)(2) does not contain the phrase "applicable non-bankruptcy law," but rather refers only to the "security agreement" as the relevant point of reference in determining the validity of a mortgagee's security interest. 11 U.S.C. § 552(b)(2).

The House Report accompanying § 214 of the Act provides an explicit statement of the purpose of the amendment to § 552:

> Under current section 552 of the Bankruptcy Code, real estate lenders are deemed to have a security interest in post-petition rents only to the extent their security interest has been "perfected" under applicable State law procedures, *Bunter [Butner] v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Inclusion under section 552, in turn, allows such proceeds to be treated as "cash collateral" under section 363(a) of the Bankruptcy Code, which prohibits a trustee or debtor-in-possession from using such proceeds without the consent of the lender or authorization by the court. In a number of States, however, it is not feasible for real estate lenders to perfect their security interest prior to a bankruptcy filing; and, as a result, courts have denied lenders having interests in post-petition rents the protections offered under sections 552 and 363 of the Bankruptcy Code.... Section 214 provides that lenders may have valid security interests in post-petition rents for bankruptcy purposes notwithstanding their failure to have fully perfected their security interest under applicable State law. This is accomplished by adding a new provision to section 552 of the Bankruptcy Code, applicable to lenders having a valid security interest which extends to the underlying property and the post-petition rents.

H.R.Rep. No. 103–835, at 48–49 (1994), U.S.Code Cong. & Admin.News pp. 3340, 3357–3358. Section 552(b)(2) thus obviates an analysis of state law for purposes of determining whether Condor's interest in the Rents is "perfected" for purposes of § 363(a) of the Bankruptcy Code, and therefore entitled to adequate protection under § 363(c). But because the amendment to § 552 was enacted subsequent to the execution of the Loan Documents, the Court must also determine whether § 552(b)(2) should be applied to the facts of this case.

■ There is a presumption that federal statutes operate prospectively only, and thus there is a corresponding presumption against the retroactive application of federal statutes. *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). In *Landgraf,* the United States Supreme Court stated the following proposition regarding the retroactive application of a federal statute:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. at 1505.

As an initial matter, then, the Court must determine whether Congress has issued an "express command" that § 552(b)(2) is to operate retroactively. Section 702 of the 1994 Reform Act, entitled "Effective Date; Application of Amendments," provides the dates on which the enactments of the 1994

Reform Act become effective. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702, 108 Stat. 4104, 4150 (1994). The 1994 Reform Act was enacted on October 22, 1994. Sections 702(a) & (b)(1) provide that unless otherwise specified, the provisions of the 1994 Reform Act take effect on the date of its enactment, and the amendments made by the Act do *not* apply to cases commenced prior to the date of enactment. *Id.* Section 702(b)(2) provides the exceptions to this rule. For example, § 702(b)(2)(D) provides that the amendments made by § 305 of the Act to various Bankruptcy Code provisions concerning the payment of interest on mortgage arrearage "shall apply only to agreements entered into after the date of enactment of this Act." *Id.*

Significantly, § 214 of the Reform Act, which is the amendment that added subsection (b)(2) to § 552 of the Bankruptcy Code, is not mentioned in § 702 of the Reform Act. By not including § 214 of the Reform Act under § 702(b)(2)(D), Congress, pursuant to the general rule as provided in §§ 702(a) and (b)(1), expressly required that the revisions to § 552 of the Bankruptcy Code apply to mortgage documents in cases filed after the date of the statute's enactment, regardless of when those documents were executed. Because the amendment to 552(b)(2) is not mentioned in the exceptions to the date of enactment set forth in § 702(b)(2) of the 1994 Reform Act, 552(b)(2) applies to cases commenced after October 22, 1994 as set forth in § 702(a).

Fairview commenced this bankruptcy case by filing a petition for relief on September 27, 1996, nearly two years after the enactment of the 1994 Reform Act. Since § 552 was amended well in advance of the commencement of Fairview's bankruptcy case, it is clear that the statute is applicable in this case. In addition, it is equally clear that the amended § 552 has no "retroactive" effect with regard to the subsequently filed case for purposes of constitutional analysis. The provisions of the Bankruptcy Code became effective only with respect to cases commenced under Title 11 of the United States Code. Fairview subjected itself to the provisions of the Bankruptcy Code, including the amended § 552, when it filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in September of 1996.

The fact that the Loan Documents were executed in 1986 is irrelevant to this conclusion. The amended statute has no effect on the agreement between Fairview and Condor. All that § 552(b)(2) does is dictate the law that a bankruptcy court must apply in determining whether a lender has a security interest that extends to certain post-petition property of the estate. As the Supreme Court stated in *Landgraf:*

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based on prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

*Landgraf,* 511 U.S. at 269–70, 114 S.Ct. at 1499 (citation omitted). The "event" in question to which a "new legal consequence" attaches in this case is not the conveyance of a lien interest in rents pursuant to the Deed of Trust or the collateral Assignment of Rents, or even the subsequent assignment of the Loan Documents to Condor. The event that is impacted by the amendment to § 552 is the filing of a bankruptcy case. Because the statute was amended prior to the commencement of Fairview's bankruptcy case, the Court is required to apply § 552(b)(2) as amended to the facts of this case.

In so applying § 552(b)(2) the Court finds that Condor's interest in the Rents, as established by the terms of the Loan Documents, extends to Rents generated post-petition and therefore is sufficient to cause the Rents to become cash collateral within the meaning of § 363(a) of the Bankruptcy Code.

But even if it were to conclude otherwise as to the operation of § 552(b)(2), the Court also finds that § 3–204 of the Real Property Article of the Maryland Code is applicable to the facts of this case. Applying § 3–204 to this case, the Court finds that Condor's security interest in the Rents is "perfected" under Maryland law and therefore subject to cash collateral protection in this bankruptcy case.

In 1992, the General Assembly of Maryland enacted legislation in direct response to case law which held that mortgagees were required to take some type of pre-petition action to "perfect" an interest in an assignment of rents in order to subject that interest to cash collateral treatment. This case law, as reflected in the *Bond* decision and as mistakenly attributed to the *Bethesda Air Rights* decision, had an unintended and deleterious effect upon negotiations between commercial lenders and borrowers with respect to troubled or nonperforming loans. A mortgagee, concerned that a mortgagor might file for bankruptcy, would be required to take some affirmative action to exercise its rights under a rent assignment in order to perfect its interests in the rents and be treated as a secured creditor in the bankruptcy. In the commercial lending context, the rent stream generated by the property is often the mortgagor's sole source of income. Once deprived of the use of the rents due to the enforcement of the assignment, the commercial mortgagor was often left with no alternative but to seek protection under the bankruptcy laws. By the same token, the mortgagor would often attempt to file for bankruptcy protection before a mortgagee had the opportunity to exercise its state law rights under the rent assignment, and thereby attempt to deprive the mortgagor of the protections of § 363(a). *See* Floor Report on House Bill 1225 (Assignment of Rents or Profits—Perfection and Effective Date), Senate Judicial Proceedings Committee, 1992 General Assembly of Maryland.

The General Assembly of Maryland took measures to resolve this dilemma. In order to foster negotiations between commercial lenders and borrowers at a time during which many real estate loans were in default, the General Assembly of Maryland enacted section 3–204 of the Real Property Article of the Maryland Code. That section provides as follows:

§ 3–204. Interests in rents or profits.

An interest created by a deed granting, assigning, or otherwise transferring an interest in rents or profits arising from property is perfected upon recordation as provided in this title:

(1) Regardless of whether, by its terms or otherwise, the grant, assignment, or transfer is operative immediately, or upon the occurrence of a specific event, or under any other circumstances; and

(2) Without the grantee, ·assignee, or transferee having to make any affirmative demand or take any further affirmative action. (1992, ch. 596).

Md.Code Ann., Real Prop. § 3–204 (1996). The General Assembly added § 3–204 to the Real Property Article in 1992 "[for] the purpose of establishing that an assignment of an interest in rents or profits from real estate shall be perfected when recorded." Act of May 26, 1992, ch. 596, 1992 Md. Laws 3563 (the "Act"). By this statute, the General Assembly established that under Maryland law the mortgagee's lien interest in the rents was "perfected", *i.e.*, could not be primed by a subsequent bona fide purchaser for value or judicial lien creditor, at the time the granting instrument was recorded. *See In re Columbia Office Assocs. Ltd. Partnership*, 175 B.R. 199, 202 (Bankr.D.Md.1994) (analyzing effect of § 3–204).

By establishing that rent assignments are perfected when recorded, § 3–204 removed the incentive for both lenders and borrowers to take litigious actions in order to advance their respective interests in the rent streams from commercial properties in a subsequent bankruptcy case, and increased the chances that such parties would be able to successfully negotiate work-out agreements with respect to nonperforming loans.

Section 2 of the May 26, 1992 Act provides that "this Act˙shall apply to all deeds *in existence on or after October 1, 1992."* *Id.*, 1992 Md. Laws 3564 (emphasis supplied). Condor argues that § 3–204 controls the outcome of the instant dispute, and that because the Deed of Trust and Assignment of Rents were duly recorded in October of 1986, Condor has a perfected interest in the Rents that survives in Fairview's bankruptcy. Fairview, on the other hand, raises a constitutional challenge to the operation of the statute, and argues that federal and state law prohibit the

"retroactive" application of § 3–204 to this matter.[8]

■ As a preliminary matter, the Court notes that there is a compelling argument to be made that the application of § 3–204 to the matter at hand is not retroactive at all. Under Maryland law, a statute is considered to operate retroactively if it "purports to determine the legal significance of acts or events that have occurred prior to the statute's effective date." *State Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 123, 360 A.2d 1, 3 (1976). Although the Loan Documents were executed prior to the enactment of the statute, § 3–204 does not alter the terms of the Loan Documents. In order to obtain the right to collect the Rents, Condor must still do that which is required under the terms of the Loan Documents, *i.e.* make a demand after a default by Fairview.

Rather, what the statute does is clarify what measures must be taken in order for Condor's security interest in the Rents to be deemed "perfected" and therefore eligible for cash collateral protection under § 363 of the Bankruptcy Code.[9] It is clear, from both the context in which the word "perfected" is used in § 3–204 as well as the legislative history of the statute, that the sole purpose of § 3–204 is to establish the status of a mortgagee's security interest in rents in the context of a bankruptcy case. In the absence of a bankruptcy case, the perfection of an assignment in rents as contemplated by § 3–204 serves no practical purpose.

Thus, the "act" or "event" that § 3–204 is designed to remedy is not the granting of security interest in rents, but rather the filing of a bankruptcy case. In other words, it is not the conveyance of a security interest in rents which prevents lenders and borrowers from working out troubled loans, but rather the effect that the filing of a bankruptcy case by the borrower has upon that conveyance. In the case at bar, Fairview filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code approximately four years after § 3–204 was enacted. Accordingly, § 3–204 may be considered as having a prospective application to Fairview's subsequently filed bankruptcy case.

■ As is the case under federal law, Maryland law recognizes a presumption that statutes are to operate only prospectively and not retroactively. *See Amecom,* 278 Md. at 123–24, 360 A.2d at 4; *see also Arundel Corp. v. County Comm'rs of Carroll County,* 323 Md. 504, 510, 594 A.2d 95, 97–98 (1991); *Mason v. State,* 309 Md. 215, 219, 522 A.2d 1344, 1346 (1987); *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 560–60, 520 A.2d 1319, 1321–22 (1987). There is, however, no absolute prohibition against applying a statute retroactively. *Spielman v. State,* 298 Md. 602, 607, 471 A.2d 730, 733 (1984); *Amecom,* 278 Md. at 123, 360 A.2d at 4. For example, a statute will be given retroactive application if the legislature clearly and explicitly intends that it be so applied. *Attorney Grievance Comm'n v. Klauber,* 284 Md. 306, 308, 396 A.2d 253, 254 (1979); *Amecom,* 278 Md. at 124, 360 A.2d at 4. The Court of Appeals of Maryland has also held that if a statute affects only procedural or remedial matters, it will be applied to all actions, both pending and future. *See State Admin. Bd. of Election Laws v. Board of Supervisors of Elections,* 342 Md. 586, 601, 679 A.2d 96, 103

---

**8.** At the Court's direction, both Condor and Fairview have filed briefs on the issue of whether § 3–204, which was enacted subsequent to the execution of the Loan Documents, should be applied to the facts of this case. In addition, the State of Maryland sought to intervene in this case for the purpose of defending the constitutionality of § 3–204 as it applies to the facts of this dispute. The Court granted the State's motion to intervene over Fairview's objection on November 20, 1996.

**9.** As previously discussed hereinabove, this Court has already concluded, without even considering

the applicability of § 3–204 to the facts of this case, that Condor's security interest in the Rents survives in Fairview's bankruptcy and that the Rents are cash collateral. Even if this Court were to accept Fairview's argument that the application of § 3–204 to this case violates Fairview's constitutional rights, the ultimate finding in this case—that the Rents are cash collateral—would be exactly the same. But because the Court finds that § 3–204 operates to clarify the law of Maryland rather than to change or alter it, the Court concludes that the statute as applied in this case is consistent with constitutional law.

(1996); *Roth v. Dimensions Health Corp.,* 332 Md. 627, 637–38, 632 A.2d 1170, 1175 (1993); *Starfish Condominium Assoc. v. Yorkridge Serv. Corp.,* 295 Md. 693, 705, 458 A.2d 805, 811 (1983); *Winston v. Winston,* 290 Md. 641, 649–50, 431 A.2d 1330, 1334 (1981); *Holmes v. Crim. Injuries Comp. Bd.,* 278 Md. 60, 63 n. 2, 359 A.2d 84, 86 n. 2 (1976); *Amecom,* 278 Md. at 124, 360 A.2d at 4; *Richardson v. Richardson,* 217 Md. 316, 320, 142 A.2d 550, 553 (1958). Notwithstanding these principles, however, a statute will not be given retroactive application under Maryland law if such an application would adversely affect vested rights, impair the obligations of contracts, or deny due process. *See Janda v. General Motors Corp.,* 237 Md. 161, 169, 205 A.2d 228, 232 (1964); *see also Vytar Assocs. v. Mayor & Aldermen of Annapolis,* 301 Md. 558, 572 n. 6, 483 A.2d 1263, 1270 n. 6 (1984); *Spielman v. State,* 298 Md. 602, 607, 471 A.2d 730, 733 (1984); *Cooper v. Wicomico County,* 278 Md. 596, 600, 366 A.2d 55, 58 (1976).

■ The expression of the legislature's intent that a statute is to be applied retrospectively must take the form of a "plain mandate." *Granahan v. Prince George's County,* 326 Md. 346, 357, 605 A.2d 91, 96–97 (1992); *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 561, 520 A.2d 1319, 1322 (1987). Because the enacting legislation of § 3–204 clearly and explicitly states that § 3–204 is to apply "to all deeds *in existence on or after October 1, 1992,*" Act of May 26, 1992, ch. 596, 1992 Md. Laws 3563 (emphasis supplied), the Court concludes that the statute should be given retroactive effect.

Fairview complains that retroactive application of § 3–204 violates the constitution because it "divests the Debtor of its right to the unfettered use and control of the Rents and its right to notice under the Assignment of Rents ... and ... relieves Condor of its obligation to give notice of default, take possession of the property, and demand the Rents." This is simply not the case. The statute does not change the obligations, responsibilities and rights of the parties under the Loan Documents. In order to exercise its right to collect and receive the Rents,

Condor must provide notice, take possession of the Property, and "demand, sue for or otherwise collect and receive all rents" of the Property. Meanwhile, absent a default, Fairview retains the right to collect and receive the Rents. Section 3–204 does nothing to change these rights and obligations under the Loan Documents. All the statute does is clarify the rights of Condor as a secured creditor in the event of the filing of a bankruptcy by a mortgagor, in this case Fairview.

But even if the statute is regarded as an alteration of the law as opposed to a mere clarification, the Court nonetheless finds that § 3–204 merely changes the procedure by which a pre-petition security interest in rents becomes perfected in the context of a bankruptcy case and therefore does not affect any substantive rights that Fairview might have under the Loan Documents. The statute does not change the duties and obligations of Fairview and Condor under the terms of their contract, and therefore does not impact what the Court would consider to be the "substantive rights" of the parties. *Amecom,* 278 Md. at 126, 360 A.2d at 5 ("A law affects substantive rights where the terms of a contract are altered."). Because the statute governs procedure and not the substantive rights of the parties, the Court finds that § 3–204 should be construed to operate retroactively under the facts of this case. *See State Admin. Bd. of Election Laws,* 342 Md. at 601, 679 A.2d at 103; *Roth,* 332 Md. at 636–38, 632 A.2d at 1175; *Starfish Condominium,* 295 Md. at 705, 458 A.2d at 811; *Winston,* 290 Md. at 649–50, 431 A.2d at 1334; *Amecom,* 278 Md. at 124, 360 A.2d at 4.

■ The Court rejects Fairview's argument that the application of § 3–204 to the facts of this case impairs Fairview's vested rights. In the case of *McComas v. Criminal Injuries Compensation Board,* 88 Md.App. 143, 149, 594 A.2d 583 (1991), the Court of Special Appeals of Maryland adopted the following definition of a "vested right":

"A vested right is a right so fixed that it is not dependent on any future act, contingency or decision to make it more secure...." *Vaughn v. Nadel,* 228 Kan. 469, 618 P.2d 778, 783 (1980). In other words,

"[t]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand." *Div. of Workers' Comp., Etc. v. Brevda,* 420 So.2d [887] at 891 [ (Fla.App. 1st Dist.1982) ] (citing *Aetna Insurance Co. v. Richardelle,* 528 S.W.2d 280, 284 (Tex.Civ.App.1975)).

*Id.* at 149–50, 594 A.2d at 586. To the extent that Fairview actually relied upon its understanding of the state of the law in Maryland prior to the enactment of § 3–204, it is clear that such reliance was nothing more than a "mere expectation based on an anticipation of the continuance of an existing law," *id.,* and therefore not a "vested right." It would appear, however, that no such reliance in fact existed. The decisions by the district court in *Bond* and by this Court in *Bethesda Air Rights* were entered in 1988, approximately four years *after* the Loan Documents were executed.

 Likewise, the application of 3–204 does not impair an obligation of contract. The Contract Clause of the United States Constitution provides that "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10, cl. 1. The Contract Clause is not an absolute prohibition, however, and does not prevent a state from exercising its police powers to promote the general welfare, even though private contracts between individuals might be adversely affected. *See Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241, 98 S.Ct. 2716, 2721, 57 L.Ed.2d 727 (1978) (quoting *Manigault v. Springs,* 199 U.S. 473, 480, 26 S.Ct. 127, 130, 50 L.Ed. 274 (1905)). To determine whether a state law violates the Contract Clause, the first step is to determine whether the law has "operated as a substantial impairment of a contractual relationship." *Spannaus,* 438 U.S. at 244, 98 S.Ct. at 2722. This analysis may be further broken down into three components: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992). If a substantial impairment to a contract is found, the final step in the analysis is to determine whether the impairment is permitted as a legitimate exercise of the state's sovereign powers. *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–413, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569 (1983); *Baltimore Teachers Union v. Mayor & City Council,* 6 F.3d 1012, 1015 (4th Cir.1993), *cert. denied,* 510 U.S. 1141, 114 S.Ct. 1127, 127 L.Ed.2d 435 (1994).

Under Fairview's view of the state of the law prior to 1992, the enactment of § 3–204 clearly has some effect upon the contractual relationship between Fairview and Condor, in that it establishes what procedures must be taken in order for Condor's bargained-for security interest in the Rents to survive in Fairview's bankruptcy case. But even if this derivative effect is deemed to be an impairment of this contractual relationship, the impairment is certainly not substantial. Although not susceptible to precise definition, the term "substantial impairment" refers to something that is more than a minimal or technical alteration of contract rights. *Baltimore Teachers Union,* 6 F.3d at 1017. A substantial impairment is more likely to be found "where the right abridged was one that induced the parties to contract in the first place ... or where the impaired right was one on which there had been reasonable and especial reliance...." *Id.* (citations omitted).

First of all, as this Court has already decided, Condor's security interest in the Rents is entitled to cash collateral treatment even if the provisions of § 3–204 are completely disregarded. Thus the "right" that Fairview complains it is being deprived of (which is really nothing more than a misguided belief that it is entitled to file a preemptive bankruptcy case for the purpose of debilitating Condor's security interest in the Rents) is something that never, in fact, existed. Furthermore, it is doubtful that Fairview was induced to grant the Assignment of Rents based on its belief that it could, by commencing a bankruptcy case before its mortgagee enforced its right to collect and receive the Rents, effectively terminate the mortgagee's interest in the Rents. It is

more likely that Fairview placed special reliance on the terms of the rent assignment agreement which require the mortgagee to comply with specified procedures before the mortgagee becomes entitled to collect and receive the Rents. As previously noted hereinabove, § 3–204 has no impact on the terms of the Loan Documents themselves, and does not alter the procedures the mortgagee must follow in order to collect and receive the Rents.

■■■ Even if the Court were to conclude that § 3–204 operates as a substantial impairment of Fairview's contract rights, it would nonetheless find that the statute is a legitimate exercise of the state's sovereign powers. "If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation ... such as the remedying of a broad and general social or economic problem." *Energy Reserves Group*, 459 U.S. at 411–412, 103 S.Ct. at 704–05. In the case at bar, the General Assembly enacted § 3–204 in order to encourage work-outs of real estate loans in the face of a depressed real estate market, and to discourage both mortgagors and mortgagees from taking drastic measures which interfered with this desired result. The legislative history is instructive:·

Due to the depression in commercial real estate, many commercial real estate loans made by Maryland Banks are in default. According to recent statistics, Maryland has the eleventh highest percentage of nonperforming real estate loans in the county.

In many cases, the lender and the borrower can "work out" these loans and avoid foreclosure and/or bankruptcy. However, the current status of the law regarding rents forces the lender, who is afraid that the borrower may go into bankruptcy, to take some action to exercise its rights, so that the lender will be treated as a secured creditor in the event a bankruptcy is filed. This action usually takes the form of a notice to the tenants directing the tenants to pay all rents to the lender. Once this action is taken, the borrower, now deprived of its only source of repayment, has no choice but to file for bankruptcy protection. Conversely, the borrower who might wish to work with the bank to restructure the loan will attempt to win the race by filing for bankruptcy prior to notice from the lender in order to deprive the lender of its security interest thereafter.

Floor Report on House Bill 1225 (Assignment of Rents or Profits—Perfection and Effective Date), Senate Judicial Proceedings Committee, 1992 General Assembly of Maryland. As the Floor Report makes clear, section 3–204 was enacted to provide certainty as to the rights of a mortgagor holding a security interest in rents in the event of a bankruptcy, and thereby facilitate the negotiations of troubled real estate loans.

■■■ This legitimate public purpose having been identified, the next step is to determine whether " 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' " *Energy Reserves Group*, 459 U.S. at 412, 103 S.Ct. at 705 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977). The degree of scrutiny to which a state law will be exposed depends upon the severity of the impairment. *Spannaus*, 438 U.S. at 245, 98 S.Ct. at 2722–23. Although a substantial impairment of contract rights warrants a "careful examination of the nature and purpose of the state legislation," where the statute imposes only a slight impairment, as does § 3–204 under the facts of this case, the level of review is minimal. *Id.* at 245, 98 S.Ct. at 2723. Moreover, where a state law impacts private contracts and involves economic and social regulation, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 22–23, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977). Prior to the enactment of the statute, the interplay between bankruptcy law and state law principles governing rent assignments created an impediment to the negotiated resolution of troubled real estate loans. Section 3–204 corrects this problem by clarifying a secured creditor's interest in rents in the

event of a bankruptcy. The statute, the effect of which is limited, for all practical purposes, to the commencement of a bankruptcy case, provides a rational and proportionate solution to an important economic problem.

■ For these same reasons, the Court also finds that § 3–204 does not offend Fairview's due process rights. Legislation which adjusts economic rights does not violate due process if it serves a legitimate public purpose and is accomplished by rational means. *General Motors Corp. v. Romein,* 503 U.S. at 191, 112 S.Ct. at 1112; *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984). Similarly, the requirements of due process are satisfied if the retroactive application of economic legislation serves a rational legislative purpose. *R.A. Gray & Co.,* 467 U.S. at 730, 104 S.Ct. at 2718. The effective implementation of § 3–204 requires its application to mortgage agreements in effect on the effective date of the statute. This is due to the fact that mortgage agreements are typically long-term agreements which often bind a mortgagor and mortgagee for periods that may run as long as thirty years or more. As indicated by the legislative history, § 3–204 was enacted to cure an immediate and pressing economic problem involving a depressed real estate market. In order to accomplish its full legislative purpose, the statute must be considered effective as to mortgage agreements in place when the § 3–204 was enacted. *Cf. State Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 127, 360 A.2d 1, 6 (1976) ("[W]here prospective application of a law is inconsistent with the nature and purpose of the legislation, retroactive effect will be given.").

Accordingly, the Court holds, for the three alternative reasons discussed in this Memorandum of Decision, that Condor holds an interest in the post-petition Rents and identifiable pre-petition proceeds so as to cause such Rents and proceeds to be cash collateral under 11 U.S.C. § 363(a). By separate ruling, this Court shall determine the extent to which Fairview may use the cash collateral with adequate protection to Condor's interest therein.

An order shall be entered in accordance with the foregoing.